**UNION PACIFIC RAILROAD CO.,**
a foreign corporation; and Dannie
Dolan, individually, Petitioners

v.

**David MARTIN and Rebecca Martin, par-
ents and next friends to Maureen Mar-
tin, a minor and incapacitated person,
Respondents.**

No. 07SC913.

Supreme Court of Colorado,
En Banc.

June 8, 2009.

Alan Epstein, Hall & Evans, L.L.C., Andrew M. Low, Davis Graham & Stubbs, LLP, Steven E. Napper, Mark C. Hansen, Alice M. de Stigter, Union Pacific Railroad Company, Denver, Colorado, Attorneys for Petitioners.

Richard A. Westfall, Allan L. Hale, Peter J. Krumholz, Hale Friesen, LLP, Denver, Colorado, Glen F. Gordon, Robert A. Schuetze, Schuetze & Gordon, LLP, Boulder, Colorado, Attorneys for Respondents.

Brian J. Waters, Levy, Morse & Wheeler, P.C., Englewood, Colorado, Attorney for Amicus Curiae the Colorado Defense Lawyers Association.

Justice COATS delivered the Opinion of the Court.

Union Pacific petitioned for review of the court of appeals' judgment affirming the district court's order granting partial summary judgment for the Martins and striking Union Pacific's affirmative defenses of comparative negligence and fault of a nonparty. *See Martin v. Union Pacific R.R. Co.*, 186 P.3d 61 (Colo.App.2007). Relying on our holding in *Vigil v. Franklin*, 103 P.3d 322 (Colo. 2004), the district court concluded that these statutory defenses were inapplicable to claims limited by Colorado's premises liability statute. The court of appeals disagreed that *Vigil* was dispositive but nevertheless found the district court's conclusion supported by a 2006 amendment to the statute, expressly making those defenses applicable without also providing an adequate indication that the amendment was intended only as a clarification of the existing statute.

Because the premises liability statute, when construed in context, does not mandate that the damages resulting from the railroad's negligence be assessed without regard to the negligence of the injured party or fault of a nonparty, the judgment of the court of appeals is reversed.

## I.

David and Rebecca Martin brought suit against Union Pacific Railroad Company and engineer Dannie Dolan for injuries suffered by their daughter in a collision between her car and a Union Pacific train. It was undisputed that in 2002, Maureen Martin's car approached a railroad crossing in Castle Rock and stalled close to, if not precisely on, the tracks. As the train approached, the warning lights flashed, the automatic gates were activated, and the arm of the crossing gate came down on top of her car. Fearing that Maureen would be struck by the oncoming train, a friend who was driving behind her attempted to push her car over the tracks with his truck. Despite, or as a result of, these efforts, the train struck Maureen's car, causing her serious injuries.

Because it was also undisputed that Union Pacific owned and maintained the railroad crossing, and yet the plaintiffs pled their claim in terms of simple negligence, the district court granted Union Pacific's motion for summary judgment. However, it simultaneously permitted the plaintiffs to amend their complaint and expressly plead pursuant to Colorado's premises liability statute.[1] In response to the plaintiffs' subsequent motion for partial summary judgment, the district court struck the defendants' affirmative defenses of comparative negligence and pro rata liability of a nonparty. Finding that our opinion in *Vigil v. Franklin* rendered these defenses inapplicable to claims of premises liability, the court concluded that the defendants had "hoist themselves on their own petard."

Union Pacific nevertheless sought to preserve its objection to the court's pre-trial ruling by presenting evidence and offering instructions on these defenses. The district court, however, declined to reconsider and denied the requested instructions. The jury found the plaintiffs liable and awarded actual damages of $7,147,120 to Maureen Martin,

actual damages of $615,714 to her parents, and $4,000,000 in punitive damages.

On appeal, Union Pacific assigned error to a number of the district court's rulings, including its decision to bar the affirmative defenses of comparative negligence and pro rata liability. The court of appeals disagreed with the district court's conclusion that our holding in *Vigil v. Franklin* was dispositive, but because the premises liability statute had been subsequently amended to expressly permit these affirmative defenses, it considered the question of statutory construction limited to a determination whether the subsequent amendment was intended as a clarification of the existing statute or a substantive change. Interpreting the conflicting legislative history of the 2006 amendment as failing to demonstrate any clear indication of intent to clarify the existing statute, a majority of the court of appeals panel affirmed the district court's grant of partial summary judgment.[2]

We granted Union Pacific's petition for a writ of certiorari.

## II.

■ Subject to constitutional limitations, the legislature can, and frequently has, abrogated various common law tort doctrines. *See generally* Colorado Revised Statutes, title 13, article 21; *see, e.g., Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1176 (Colo.1993) (recognizing the legislature's abrogation of the common law rule that the release of one tortfeasor operated to release all tortfeasors from liability for the same tort). As relevant here, in 1975 the General Assembly expressly abrogated the harsh doctrine of contributory negligence and replaced it with a comparative negligence approach, mandating that damage awards for negligence resulting in death or injury merely be diminished (rather than barred altogether) in proportion to the amount of negligence attributable to the person for whose injury, damage, or death re-

---

1. The court preliminarily found that Maureen was a licensee for purposes of the landowner's statutory duty of care, but after hearing the evidence at trial, it ruled that she was an invitee and instructed the jury accordingly.

2. The majority also affirmed the district court's evidentiary ruling, its classification of Maureen Martin as an invitee, and its award of punitive damages, but it reversed the district court's denial of the Martins' motion to increase punitive damages.

covery is made. Ch. 152, sec. 1, § 13–21–111, 1975 Colo. Sess. Laws 570. In a similar vein, in 1986 the legislature extended this approach by limiting the liability of defendants in such actions to an amount no greater than that represented by the degree or percentage of negligence or fault attributable to them, even though some of the fault might be attributable to a nonparty. Ch. 108, sec. 1, § 13–21–111.5, 1986 Colo. Sess. Laws 680–81.

Most particularly, in 1986 and again in 1990, in response to *Gallegos v. Phipps*, 779 P.2d 856 (Colo.1989) (striking down portions of 1986 premises liability statute as violating equal protection), the General Assembly returned premises liability law in this jurisdiction to a status approach similar to that from which this court had largely departed some fifteen years earlier. *See Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971). It did so by correlating the duty of care owed by landowners to others on their property according to their status as either trespassers, licensees, or invitees. *See* Ch. 107, sec. 1, § 13–21–115, 1990 Colo. Sess. Laws 867–69; ch. 109, sec. 1, § 13–21–115, 1986 Colo. Sess. Laws 683–84; *see also Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1218 (Colo.2002). In *Vigil v. Franklin*, we held that by limiting the liability of landowners according to these statutorily defined duties of care, and by specifically singling out for continued vitality the common law doctrine of attractive nuisance, the legislature demonstrated its intent to abrogate all other common law doctrines relative to the care required of landowners. 103 P.3d at 328–29. After the district court's ruling in this case that our holding in *Vigil* also barred the apportionment of damages dictated by the legislature's provision for comparative negligence and pro rata liability, but prior to any resolution of Union Pacific's appeal of that ruling, the General Assembly amended the premises liability statute by expressly recognizing the applicability of those damages provisions. Ch. 107, sec. 1, § 13–21–115, 2006 Colo. Sess. Laws 344.

■ A substantial body of interpretative aids, either prescribed by the legislature itself or developed by the courts, exists to help determine which among a number of competing reasonable interpretations of particular statutory language actually embodies the legislative intent. *Frank M. Hall & Co. v. Newsom*, 125 P.3d 444, 448 (Colo.2005). Many of these aids are little more than grammatical or syntactical conventions; others largely reflect conventions in legislative drafting; still others draw reasonable inferences from the relationship between a legislative enactment and external events, or actually seek to reconstruct the purpose of drafters, sponsors, or individual supporters. All function in the service of construing a statute by selecting among reasonable interpretations of the particular language chosen by the legislature.

■ In the absence of any clear indication to the contrary, statutory enactments are presumed to be intended to change the law, and to do so only prospectively. *City of Colorado Springs v. Powell*, 156 P.3d 461, 464 (Colo.2007). Sometimes, however, the legislature may deliberately act to clarify existing statutory language or seek to apply a change in the law retroactively. With regard to the latter, the legislature can operate only within strict constitutional limitations, *id.* at 465 (citing Colo. Const. art. II, § 11 (prohibiting the General Assembly from passing "retrospective" legislation)), and with regard to the former, even a clear indication of intent to clarify cannot dispositively establish the meaning of previous legislation. *See O'Gilvie v. United States*, 519 U.S. 79, 90, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996); *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960); *Frank M. Hall*, 125 P.3d at 451.

■ A failure to include in amendatory legislation any adequate indication of intent to clarify existing statutory language can therefore, at most, be indicative of the legislature's understanding of the current state of the law and its desire to change it. Especially where an existing statute has already undergone construction by a final judicial authority, further legislative amendment necessarily reflects the legislature's understanding of that construction, or perhaps simply disagreement with how it is being (or fear of how it is likely to be) interpreted by other

courts. Such an amendment can fairly be presumed to intend a change in the law—the law as the amending legislature believes it to be following earlier judicial construction—but it implies virtually nothing about original legislative intent. Amendatory legislation, in the absence of an adequate indication of intent to clarify, may therefore, in and of itself, contribute precious little to the judicial construction of the original, un-amended statutory language.

The sporadic, and at times contradictory, references to both clarification and reinstatement by individual drafters, sponsors, and witnesses analyzed by the court of appeals indicate little more than legislative dissatisfaction with any reading of the premises liability statute barring the application of these damage apportionment doctrines. A belief by some legislators that such a construction already was, or might soon become, the judicially accepted interpretation of the premises liability statute could, however, have little bearing on our ultimate construction of the original statutory language. In light of the uncertainty surrounding the proper construction of the premises liability statute at the time of its 2006 amendment, interpretive aids directed toward understanding the language of the original enactment and its relation to the statutory scheme as a whole are far more likely to offer meaningful assistance in discovering the original legislative intent. *See generally*, 1A Norman J. Singer, Sutherland Statutory Construction, § 22:30, at 373 (6th ed. 2000) ("An amendment of an unambiguous statute indicates a purpose to change the law, whereas no such purpose is indicated by the mere fact of an amendment of an ambiguous provision.").

As the court of appeals recognized, the holding of *Vigil v. Franklin* also implied little about related tort reform statutes in general or the applicability of the statutory defenses of comparative negligence and pro rata liability in particular. *Martin*, 186 P.3d at 65. Not only was the rule of decision in *Vigil* limited to the abrogation of common law doctrines affecting the duties of landown-

ers, but the rationale supporting it derived entirely from the relationship between legislation and previously existing common law doctrines. Although we acknowledged the exclusivity of landowner duties of care imposed by the premises liability statute, we had no cause to, nor did we, suggest anything about the relationship between these statutory duties and other statutory provisions limiting liability for damages according to a tortfeasor's share of fault.

In fact, the premises liability statute, prior to its 2006 amendment, was silent with regard to these other reforms assigning damages according to relative fault. In part because it would simply be impractical to require cross-references in each statute making applicable the related provisions of a broader scheme, *see Martinez v. People*, 69 P.3d 1029, 1033 (Colo.2003) (citing 2B Norman J. Singer, Sutherland Statutory Construction, § 51:02, at 188 (6th ed. 2000) ("Provisions in one act which are omitted in another on the same subject matter will be applied when the purposes of the two acts are consistent.") ), it is a well-accepted tenet of statutory construction that in the absence of a contrary indication, statutes should be construed to assume the existence of other parts of the same statutory scheme and create a single, harmonious whole. *Frank M. Hall*, 125 P.3d at 448 ("[A] provision existing as part of a comprehensive statutory scheme must be understood, when possible, to harmonize the whole."); *Walgreen Co. v. Charnes*, 819 P.2d 1039, 1043 & n. 6 (Colo. 1991) (applying the rule that statutes relating to the same subject matter be construed *in pari materia*, gathering the legislative intent from the whole of the enactments).

Sections 13–21–111 and 111.5, providing for comparative negligence as a measure of damages and pro rata liability, by their own terms, apply to actions brought as the result of death or injury generally, and they mandate the apportionment of damages assessed against a defendant in terms of the degree or percentage of negligence or fault attributable to him.[3] By contrast, section 13–21–115, the premises liability statute, de-

---

**3.** The text of section 13–21–111(1), C.R.S. (2008) mandates that an injured party's "[c]ontributory negligence shall not bar recovery *in any action*

... to recover damages for negligence resulting in death or in injury to person or property if such negligence was not as great as the negligence of

scribes the limited circumstances in which a landowner can be held liable for injuries occurring on his real property by reason of the condition of that property, or the activities conducted or circumstances existing on the property. Although the premises liability statute limits an injured party's entitlement to recovery not only on the basis of the landowner's culpability or fault but also on the basis of the injured party's authorization and reason for being on the property, it makes no reference whatsoever to the apportionment of liability on the basis of relative fault, or corresponding reduction of damages against the defendant.

■ The statute cannot, by limiting the circumstances in which a landowner can be held liable for injuries occurring on his land alone, be reasonably understood to exempt this class of actions from generally applicable legislative dictates concerning the measure of damages in injury cases. The legislative decision to apportion damages according to fault reflects a broad policy choice, not only to reject complete exoneration whenever another is partially at fault, but also to reject the imposition of full liability on one who bears only partial responsibility. Nothing in the premises liability statute suggests a different policy choice with regard to the extent of damages to be imposed on landowners. More specifically, however, nothing in the language of the premises liability statute conflicts with or suggests an intent to relieve injured parties of the effects of these damage-apportionment provisions.

In *Vigil*, we found that the statutory duties owed by landowners to trespassers, licensees, and invitees, as specifically prescribed in subsection (3) of the statute, when combined with the statute's express allowance of recovery "only as provided in subsection (3)," established the premises liability statute as "the sole codification of landowner duties in tort." 103 P.3d at 328. Rather than pre-

scribing additional or different duties of care or altering the grounds for recovery in any way, the statutory provisions for comparative negligence and pro rata liability dictate only that the recovery of damages resulting from injury or death be limited on the basis of relative fault. Despite its silence concerning the defenses of comparative negligence and pro rata liability, it is therefore apparent, without resort to extrinsic aids to statutory interpretation like legislative history, that section 115 functions harmoniously with sections 111 and 111.5 to govern different aspects of a single statutory scheme.[4]

### III.

■ Because the premises liability statute, when construed in context, does not mandate that the damages resulting from the railroad's negligence be assessed without regard to the negligence of the injured party or fault of a nonparty, the judgment of the court of appeals is reversed, and the case is remanded to the court of appeals with instructions to return the case to the district court for a new trial.

---

the person against whom recovery is sought." (Emphasis added). Likewise, section 13–21–111.5, C.R.S. (2008), describing the affirmative defense of pro rata liability, declares that *"no defendant* shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant" in an action brought as a result of a death or an injury to person or property. (Emphasis added).

4. Respondents also assert that even if the district court erred in construing the statute to bar these statutory defenses, any error was harmless because Union Pacific failed to offer sufficient evidence to justify their consideration by the jury. Because the district court struck the defenses before trial by granting partial summary judgment, however, Union Pacific was not required to substantiate its affirmative defenses.