**JEFFERSON COUNTY BOARD OF EQUALIZATION, Petitioner**

v.

**Mark W. GERGANOFF, Robin E. McIntosh, and Board of Assessment Appeals, Respondents.**

**No. 09SC916.**

Supreme Court of Colorado,
En Banc.

Nov. 8, 2010.

Rehearing Denied Nov. 30, 2010.*

---

* Justice Martinez, Justice Coats and Justice Eid would grant the Petition.

Ellen G. Wakeman, Jefferson County Attorney, Eric T. Butler, Assistant County Attorney, Golden, Colorado, Attorneys for Petitioner.

Mark W. Gerganoff, Golden, Colorado, pro se and attorney for Respondent Robin E. McIntosh.

No appearance by or on behalf of Board of Assessment Appeals.

Lance J. Ingalls, Douglas County Attorney, Kelly Dunnaway, Deputy Douglas County Attorney, Robert D. Clark, Senior Assistant County Attorney, Michelle B. Whisler, Senior Assistant County Attorney, Castle Rock, CO, Attorneys for Amicus Curiae Douglas County.

H. Lawrence Hoyt, Boulder County Attorney, Michael A. Koertje, Assistant County Attorney, Boulder, Colorado, Attorneys for Amicus Curiae Boulder County Board of Equalization.

Hoban & Feola, LLC, Robert T. Hoban, Esq., Denver, Colorado, Attorneys for Amici Curiae Jaki Barry, Jim Butler, Dan Edwards, OPLLC, Jamie and Kim McIntosh, Jeff Quinlan, STP, and SH.

Kathryn Schroeder, Arapahoe County Attorney, George Rosenberg, Assistant County Attorney, Breena N. Meng, Assistant County Attorney, Littleton, Colorado, Attorneys for Amicus Curiae Arapahoe County Board of Equalization.

David R. Fine, City Attorney, City and County of Denver, David V. Cooke, Assistant City Attorney, Municipal Operations Section, Denver, Colorado, Attorneys for Amicus Curiae City and County of Denver.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

We granted certiorari in *Gerganoff v. Board of Assessment Appeals*, 222 P.3d 395 (Colo.App.2009), to decide whether, upon sustaining in part a taxpayer's appeal of a county's property valuation, the state's Board of Assessment Appeals (the "BAA" or "Board") is required to award the taxpayer his or her costs incurred in bringing the appeal. We hold that the BAA has the discretion to award costs, and we reverse the judgment of the court of appeals.

## II. Facts and Procedural History

After losing their appeal to the Jefferson County Board of Equalization (the "County" or "BOE") regarding the assessor's 2007 valuation of their home, married property owners Mark Gerganoff and Robin McIntosh (the "Taxpayers") appealed to the BAA. The Board sustained their appeal in part by ordering a reduction in the valuation of the Taxpayers' home, although not to the amount the Taxpayers had initially requested. The Taxpayers were thereby entitled to a reduction in property taxes, and accordingly a refund of taxes overpaid.

Following the BAA decision, the Taxpayers requested that the Board award them the costs they incurred in hiring an expert appraiser for the appeal. The BAA summarily denied the request, as well as a request for written findings supporting the denial of costs, and the Taxpayers appealed to the court of appeals. Concluding that the BAA was required to award costs pursuant to section 39–8–109(1), C.R.S. (2009), but that the BAA may have properly exercised its discretion to award zero dollars in costs, a division of the court of appeals reversed and remanded the case to the BAA for reconsideration. *Gerganoff*, 222 P.3d at 397. The County subsequently petitioned this court for review.[1]

We conclude that the court of appeals misinterpreted section 39–8–109(1), C.R.S.

(2009). Subsection 109(1) does not require the BAA to award costs in cases before it.

## III. Analysis

Before turning to interpretation of subsection 109(1), we begin with a review of the BAA appeal process.

### A. Appeals to the Board of Assessment Appeals

A taxpayer dissatisfied with a property tax valuation of his or her residence has several avenues of review. To begin the process, the taxpayer must object and protest to the assessor. § 39–5–122, C.R.S. (2010). If the assessor denies the objection and protest, the taxpayer may then appeal to the county board of equalization. §§ 39–5–122(3); 39–8–106, 107, C.R.S. (2010). If the county board of equalization denies the petition in whole or in part, the taxpayer has three options for additional review: appeal to the district court for a trial de novo, submit the dispute to binding arbitration, or, as the Taxpayers chose here, appeal to the BAA for a hearing. § 39–8–108(1), C.R.S. (2010).

The Board, comprised of licensed real estate appraisers experienced in property valuation and taxation, is a quasi-judicial tribunal within the Colorado Department of Local Affairs that hears property tax appeals from decisions of county boards of equalization. §§ 39–2–123(1)–(2), 125(1)(c), C.R.S. (2010). At a BAA hearing, a taxpayer may appear on his or her own behalf or be represented by an attorney or any other individual. § 39–2–127(4), C.R.S. (2010). A BAA hearing is not a formal judicial hearing, although it has some aspects of a judicial proceeding, including presentation of witness testimony and exhibits, as well as opening and closing statements. *See generally* BAA Procedures of Practice and Procedures of Review, 8 Colo. Code Regs. § 1301–1 (2010) ("BAA Rules"); BAA Instructions for Taxpayers, http://dola. colorado.gov/baa/instruct.htm (last visited November 4, 2010). After the hearing, the BAA renders a written decision. BAA Rule 18. If the decision of the BAA is against the

---

1. We granted certiorari on the following issue: Whether section 39–8–109, C.R.S. (2008), requires the Board of Assessment Appeals to award costs to taxpayers whose appeal is sustained in part.

taxpayer, the taxpayer may appeal to the court of appeals. § 39–8–108(2), C.R.S. (2010).

If a taxpayer achieves a reduction in valuation in the appeal process, he or she must then set into motion the steps set forth by section 39–8–109(1) for obtaining a refund of taxes he or she overpaid. *See* § 39–8–109(1) (entitled "Effects of board of assessment appeals or district court decision"). Once the taxpayer provides the county assessor with all relevant decisions in the case, which set forth the modified property value, the county assessor forwards this documentation to the county treasurer. *Id.* The county treasurer then refunds to the taxpayer the appropriate sum of money, which, prior to the 2010 amendment of subsection 109(1), included the costs of the BAA appeal "as may be fixed" by the BAA.[2] *Id.* Prior to amendment, subsection 109(1) also required the taxpayer to pay the county's costs, "as may be fixed" by the BAA, in the event the county prevails and the assessed valuation is upheld.

### B. Rules of Statutory Interpretation

We review de novo questions of statutory interpretation. *Dubois v. People,* 211 P.3d 41, 43 (Colo.2009). Familiar rules of statutory interpretation guide our analysis.

In determining the meaning of a statute, our central task is to ascertain and give effect to the intent of the General Assembly. *People v. Dist. Ct.,* 713 P.2d 918, 921 (Colo.1986). The language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme. *See id.* at 921; *Bynum v. Kautzky,*

784 P.2d 735, 736 (Colo.1989). Thus, our interpretation should give consistent, harmonious, and sensible effect to all parts of a statute. *Dist. Ct.,* 713 P.2d at 921.

We begin by looking to the express language of the statute, construing words and phrases according to grammar and common usage. *Id.*; § 2–4–101, C.R.S. (2010). Additionally, in this case, we must strictly construe the provision at issue. § 39–1–101, C.R.S. (2010) ("[T]he provisions of said articles [1 through 13 of title 39] shall be strictly construed."). If, after review of the statute's language, we conclude that the statute is unambiguous and the intent appears with reasonable certainty, our analysis is complete. *Dist. Ct.,* 713 P.2d at 921.

However, where a statute is ambiguous, we employ additional interpretational aids to assist with "selecting among reasonable interpretations of the particular language chosen by the legislature." *Union Pac. R.R. Co. v. Martin,* 209 P.3d 185, 188 (Colo. 2009). A statute is ambiguous when it "is capable of being understood by reasonably well-informed persons in two or more different senses." 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 45:2, at 13, 19 (7th ed. 2007) (explaining that "some of the words used may refer to several objects and the manner of their use does not disclose the particular object to which the words refer").

Relevant to this case, we may look for guidance to statutory history, expressions of purpose in the constitution and in legislative declarations, and the consequences of a particular construction. § 2–4–203, C.R.S. (2010).

---

2. In response to the court of appeals' decision in this case, the General Assembly amended section 39–8–109(1). *Hearing on S.B. 10–138 Before the H. Comm. on Local Gov't,* 67th Gen. Assemb., 2d Reg. Sess. (Mar. 23, 2010) (*"House Hearing"*) (statement of Rep. Peniston). As a result, subsection 109(1) was amended to require that the parties to an appeal to the BAA or district court be responsible for their own costs on appeal, thus removing the language about refunding the costs of appeal to the taxpayer. *See* Ch. 155, sec. 1, § 139–8–109(1), 2010 Colo. Sess. Laws 533.

However, these amendments apply only to appeals commenced on or after August 11, 2010. *Id.* sec. 2. Accordingly, they do not apply to this case or to any appeal filed prior to August 11,

2010. Nor do they assist with assessing the legislative intent behind the provision we review today. *See Union Pac. R. Co. v. Martin,* 209 P.3d 185, 188–89 (Colo.2009) ("Especially where an existing statute has already undergone construction by a final judicial authority, further legislative amendment necessarily reflects the legislature's understanding of that construction, or perhaps simply disagreement with how it is being (or fear of how it is likely to be) interpreted by other courts. Such an amendment can fairly be presumed to intend a change in the law—the law as the amending legislature believes it to be following earlier judicial construction—but it implies virtually nothing about original legislative intent.").

Additionally, the heading of a statute, although not dispositive of legislative intent, can aid in determining legislative intent. *See City of Ouray v. Olin,* 761 P.2d 784, 789 (Colo.1988) (finding helpful the title of legislation); Singer, *supra* § 47:14, at 336, 339–40 ("Section headings ... serve the same functions for sections that the title does for the entire act and generally should be accorded the same treatment.").

Finally, because this case involves costs and involves the pursuit of costs against a public entity, certain foundational considerations frame our analysis. As a general matter, absent express legislative direction, the award of costs is a discretionary decision made by the adjudicating authority. *Cf.* C.R.C.P. 54(d) ("costs shall be allowed as of course to the prevailing party unless the court otherwise directs"); *Archer v. Farmer Bros. Co.,* 90 P.3d 228 (Colo.2004) ("We have interpreted [C.R.C.P. 54(d)] to mean that trial courts may exercise their discretion to award costs to a prevailing party." (internal quotation marks and citations omitted)).

This adherence to a finding of discretion absent express legislative direction is particularly important where the costs are to be levied against the government and paid out of public funds, necessarily implicating sensitive budget and funding considerations. *Cf.* C.R.C.P. 54(d) (emphasizing that "costs against the state of Colorado, its officers or agencies, shall be imposed only to the extent permitted by law"); *People v. Dist. Ct.,* 808 P.2d 831, 835–36 (Colo.1991) (addressing attorney fees, and explaining that an award "to be payable from public funds implicates sensitive budget and funding considerations, and authority to intrude into these areas is not to be lightly implied"). Equally important, we are directed by statute to presume that "[p]ublic interest is favored over any private interest." § 2–4–201(1)(e), C.R.S. (2010).

### C. Interpretation of § 39–8–109(1)

■ In this case, the court of appeals applied plain language review in concluding that subsection 109(1) mandates a refund of costs. *See Gerganoff,* 222 P.3d at 397. However, we find the language of the statute ambiguous, requiring resort to additional tools of statutory interpretation to determine its meaning.

The critical language is contained in the third sentence of subsection 109(1):

> Upon presentation to the treasurer by the county assessor of a copy of the order or judgment of the board of assessment appeals or district court, as the case may be, and, if the case has been appealed, copies of all further decisions of the board of assessment appeals, district court, court of appeals, and supreme court, modifying the valuation for assessment of the property, the appellant, identified as the petitioner or plaintiff on the order or judgment of the board of assessment appeals or district court, shall forthwith receive the appropriate refund of taxes and delinquent interest thereon, together with refund interest at the same rate as delinquent interest as specified in section 39–10–104.5, and a refund of costs in said court or board of assessment appeals, as the case may be, including the fees of the appellant's witnesses, in such amount as may be fixed by the court or board of assessment appeals, as the case may be.

§ 39–8–109(1).

At 160 words in length and as the product of repeated legislative amendments, this sentence is not a model of clarity. The key verb phrase is written in the passive voice, creating ambiguity as to the intended actor, and the generally contradictory terms "shall" and "may" both appear in the sentence.

Other than the two "as may be fixed" statements in subsection 109(1), we find nothing in the BAA's organic statute, the Board's rules, or the Colorado Administrative Procedure Act that mentions the Board's authority to fix awards of costs, and the parties have alerted us to none. *See* § 39–2–125 (enumerating the duties of the BAA); BAA Rules; § 24–4–105(4), C.R.S. (2010) (listing actions an agency conducting a hearing can take, including award of attorney fees). However, it is reasonable to infer that the Board at least has an implied or incidental discretionary authority to award costs if doing so furthers its duties in holding quasi-judicial hearings. *Cf. Hawes v. Colo. Div. of Ins.,* 65

P.3d 1008, 1023 (Colo.2003) ("[I]t is ... well-established that agencies possess implied and incidental powers filling the interstices between express powers to effectuate their mandates."); § 24–4–105(4) (permitting agency to "take any other action authorized by agency rule consistent with this article or in accordance, to the extent practicable, with the procedure in the district courts").

While the text of subsection 109(1) indicates that the legislature did not impose on the BAA a mandatory duty to award costs, application of the additional interpretational tools available to us confirms that this is the correct interpretation.

### 1. Express Language and Statutory Scheme

The precise clause at issue in the third sentence of subsection 109(1) is: "the appellant [taxpayer] ... shall forthwith receive the appropriate refund of taxes [with interest] ..., and a refund of costs in said court or board of assessment appeals, as the case may be, including the fees of the appellant's witnesses, in such amount as may be fixed by the court or board of assessment appeals, as the case may be." § 39–8–109(1). This clause is preceded by a long prepositional phrase describing what documents the county assessor must present to the county treasurer. The subject "appellant" is followed by the passive verb phrase "shall forthwith receive," which in turn has two objects, (1) a tax refund with interest and (2) costs. "Costs" has two descriptive phrases associated with it: "including the fees of the appellant's witnesses" and "in such amount as may be fixed by the ... board of assessment appeals."

■ "[S]hall ... receive" imposes no obligation on the BAA. This sentence deals with a required payment of money to a taxpayer, and the only possible paying party is the county treasurer. Neither does the phrase "as may be fixed by the ... [BAA]" impose an obligation on the Board to award costs. "As may be fixed" merely identifies the authority that sets the award amount, if there is to be any. As a general matter, "may" denotes a grant of discretion. *Dist. Ct.*, 713 P.2d at 922; *see also People v. Triantos*, 55 P.3d 131, 134 (Colo.2002). While this is not always true, *see Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106, 1113 (Colo.1990) (explaining that if legislative purpose is not fulfilled by a permissive construction, "may" is construed as mandatory), we perceive no indication here that "may" was intended to impose any new obligation upon the BAA.

If we look to the procedural scheme created by subsection 109(1), it becomes clearer that this sentence imposes no obligation on the BAA. Subsection 109(1) standardizes the method for notifying the treasurer that a refund is due, how much is due with what amount of interest, and to whom it is due. This process takes place after the BAA has rendered its decision, and the BAA is no longer involved. Additionally, unlike typical fee-shifting provisions which focus solely on the cost award, the focus here is almost entirely on something other than cost awards, namely the process for paying a refund to a taxpayer after achieving a valuation adjustment. The provision's heading supports our conclusion: "Effects of board of assessment appeals or district court decision." It makes little sense to assume that the legislature imposed an important duty on the BAA and hid it in within this procedural scheme of post-BAA actions.

In arguing that the express language of subsection 109(1) mandates the BAA to award costs, the Taxpayers point to the last sentence of subsection 109(1), which provides that if the county prevails at the BAA appeal, "the county shall recover costs from the appellant in such amount as may be fixed" by the BAA. § 39–8–109(1). They contend that this sentence mandates a cost award to the prevailing county from the taxpayer and that the sentence in issue here must be read to have the same effect when the taxpayer prevails. Even if the two sentences are to have the same effect, the sentence awarding costs to the county, though much shorter, is similarly constructed and suffers from the same confusing attributes. The interpretation we give to one sentence must be the same as the interpretation we give to the other. Therefore, reference to the final sentence in the subsection neither supports nor negates the

Taxpayers' contention that the BAA must award them costs.

## 2. Statutory History

There is limited legislative history for the early legislative enactments and revisions we review here. However, a review of enactments and successive amendments shows that the BAA's authority with respect to awarding costs has always been, and remains, discretionary. We learn that costs to a prevailing taxpayer began as a discretionary decision of the district court, while costs to a prevailing county were mandatory. In its revised form, the statute is less clear, but there is no evidence of any attempt to mandate the award of costs to a prevailing taxpayer.

The source of subsection 109(1) was first adopted in 1902. Initially, the only procedure for appealing a valuation was an appeal to the district court. Ch. 3, sec. 94–A, 1902 Colo. Sess. Laws 93–94 (later codified in R.S. § 5641 (1908)). There was no board of assessment appeals and no arbitration alternative. *See id.* The entire appeal process from assessor to board of county commissioners (now the BOE) to the district court resided in one provision divided into separate paragraphs for each phase. *Id.*

The paragraph relating to appeals to the district court provided that, if the taxpayer succeeded on appeal to the district court, "the treasurer *shall refund* such tax ... upon the presentation to him of a certified copy of the order of the judgment modifying the same, and in all cases where any tax so collected shall be refunded the taxpayer shall receive interest on the amount refunded...." *Id.* (emphasis added). This sentence supports our understanding that the term "shall" in the sentence we review today imposed a mandate on the county treasurer and no other entity.

In a separate paragraph dedicated to costs, the original law stated that a prevailing taxpayer "may" recover costs on appeal, while a prevailing county "shall" recover costs against the taxpayer:

The cost of producing his witnesses before the board of county commissioners shall be paid by the petitioner, and the cost of producing witnesses to sustain the assessment shall be paid by the county. But on appeal to the district court, if the petitioner obtain judgment modifying the assessment, he may recover judgment for his costs in such court, including his witnesses' fees, and if judgment be for the county, the county shall recover costs against the petitioner.

*Id.* This first iteration of the statute, then, was permissive with respect to the court's authority to award costs to a prevailing taxpayer, but mandatory with respect to costs to a prevailing county.

Relevant to the case now before us, the legislature revised the statute in 1943, removing without replacing the active "treasurer shall refund" language, but leaving in the passive verb phrase requiring refund of interest. *See* Ch. 158, sec. 16, § 116, 1943 Colo. Sess. Laws 500–01. As amended, the relevant portion of the statute read: "in case the appellant shall succeed in the district court, ... upon the presentation to him [treasurer] of a certified copy of the order of the judgment, modifying same and in all cases where any tax so collected shall be refunded, the taxpayer shall receive interest on the amount refunded...." *Id.* at 500. When reviewed in light of the preceding version of this language, this revision did not change the existing law requiring the county treasurer to make the refund.

When the entire chapter was repealed and reenacted in 1964, the legislature combined the payment of refund and the payment of costs into one long sentence containing the two elements we construe today, "shall ... receive" and "as may be fixed":

Effects of court decision.—If upon appeal the appellant shall be sustained, in whole or in part, then upon presentation to the treasurer of a certified copy of the order of judgment modifying the valuation for assessment of his property, he *shall forthwith receive* the appropriate refund of taxes, together with interest thereon at eight per cent per annum from the date of payment thereof, and a refund of costs in said court, including the fees of his witnesses, in such amount *as may be fixed* by the

court; if judgment be for the county, then the county shall recover costs from the appellant in such amount as may be fixed by the court.

Ch. 94, sec. 1, § 137–8–7, 1964 Colo. Sess. Laws 713–14 (emphasis added). It is thus with this 1964 enactment that the cost award clause takes on the passive voice in defining the payment. However, nothing in the reenactment suggests that some entity other than the treasurer must pay the refund to the taxpayer.

Additionally, in this 1964 enactment, the legislature altered the nature of the cost awards. The previous language that prevailing taxpayers "may recover" costs was replaced by an award of costs in an amount "as *may* be fixed" by the court. And, the formerly mandatory award of costs to a prevailing county ("shall recover costs against the petitioner") was changed to a discretionary award to a prevailing county in an amount "as may be fixed" by the court. Cost awards for prevailing taxpayers and prevailing counties were thus revised to be consistent with each other. This evolution shows that the legislature intended these awards to be discretionary, and there is no support for the contention otherwise.

In 1970, the General Assembly passed House Bill 1053: "An act concerning the general property tax; creating a division of property taxation, including a property tax administrator, and providing for a board of assessment appeals; and defining their powers, duties, and functions." Ch. 90, 1970 Colo. Sess. Laws 371–88. In this bill, the General Assembly created the BAA and enumerated its duties, inserting the Board as an intermediate layer of review between the BOE and appeals to the district court. Ch. 90, sec. 1, § 137–3–25, 1970 Colo. Sess. Laws 377 (enumerating duties); Ch. 90, sec. 23, § 137–8–6, 1970 Colo. Sess. Laws 386 (providing for appeals from the BOE to the BAA, and then to the district court). The General Assembly accordingly amended the provisions relating to these appeals to conform to the new provisions, adding reference to the BAA in now subsection 109(1) regarding the effects of a BAA or district court decision. Ch. 90, sec. 24, § 137–8–7, 1970 Colo. Sess.

Laws 386. In giving the BAA the authority to hear these appeals, the General Assembly did not alter the text or substance of now subsection 109(1), leaving the costs award as a discretionary decision of the reviewing entity. Nor did the newly enumerated duties include a duty to award costs on appeal.

With the 1970 amendment, subsection 109(1) took the form we now construe, and other amendments since that time did not change the relevant language.

From this statutory history, we know that costs to a prevailing taxpayer began as a discretionary decision of the court, while costs to a prevailing county were mandatory. In its revised form, the sentence structure of subsection 109(1) was changed from active to passive voice, but there was no attempt to mandate that the court award costs to a prevailing taxpayer. Instead, the permissive nature of such awards has persisted through the various amendments, including the addition of the BAA as an alternative appeal route.

## IV. Conclusion

We conclude that the language of subsection 109(1), the statutory scheme, and the legislative history all firmly support the conclusion that subsection 109(1) imposes no mandatory duty on the BAA. Whether to award costs remains within the discretionary powers of the Board.

The judgment of the court of appeals is reversed. We decline to award the Taxpayers their requested costs on appeal.

Justice MARTINEZ dissents, and Justice EID joins in the dissent.

Justice COATS dissents.

Justice MARTINEZ, dissenting.

I respectfully dissent to express my opinion that the plain language of subsection 39–8–109(1) resolves the instant case. The third sentence of subsection 39–8–109(1) contains the following critical language:

[T]he appellant . . . shall forthwith receive the appropriate refund of taxes and delinquent interest thereon . . . and a refund of costs in said court or board of assessment

appeals, as the case may be, including the fees of the appellant's witnesses, in such amount as may be fixed by the court or board of assessment appeals, as the case may be.

On its face, the statute expressly provides that a taxpayer, who is successful in whole or part, shall receive an award of costs that includes witness fees. Despite this passive language, the statute sufficiently provides that the refund of costs including witness fees is mandatory. There is therefore no need to resort to other rules of statutory construction. *People v. Meredith,* 763 P.2d 562, 564 (Colo.1988).

Nonetheless, the majority argues that the statute is ambiguous. The primary concern appears to be the fact that the statute employs the generally contradictory terms "shall ... receive" and "as may be fixed" in the same sentence. A closer reading, however, provides a clear explanation for this alleged contradiction. Quite simply, while the taxpayer "shall ... receive" an award, the amount of the award is discretionary and "may be fixed" by the court or Board of Assessment Appeals ("BAA"), as the case may be. Due to the lack of contradiction, there is no ambiguity and no need to turn to the legislative history.

Indeed, even if these two terms did render the statute ambiguous, the majority's analysis of the legislative history does not assist me in determining whether an award is mandatory or discretionary. In its analysis of the legislative history, the majority focuses on three separate iterations of subsection 39–8–109(1): the first iteration of the statute in 1901, a subsequent revision in 1943, and the 1964 reenactment. Apparently, the evolution of the statute over these three iterations is meant to show that the legislature intended the award of costs to be discretionary.

The problem, however, is that the majority's analysis does not support its contention. Its analysis of the prior enactments of subsection 39–8–109(1), without· more, are inconclusive for the simple reason that they involve different statutory language. The language in these prior iterations does not illuminate the current language in subsection 39–8–109(1), let alone assist me with

"selecting among reasonable interpretations of the particular language chosen by the legislature." *Union Pac. R.R. Co. v. Martin,* 209 P.3d 185, 188 (Colo.2009). Because I believe that subsection 39–8–109(1), while poorly written, nonetheless provides for a mandatory award of costs, I find no need to rely on an ambiguous interpretation of the statutory history. Accordingly, I respectfully dissent.

I am authorized to state that Justice EID joins in this dissent.

Justice COATS, dissenting.

Given the comparatively insignificant amount of costs at issue here and the fact that the statute has now been amended to make each party responsible for its own costs of appeal, it may be difficult to justify devoting further energy to this case. I write very briefly in dissent, however, because I can hardly recall a clearer example of over-construction by this court. While I count myself among the last to minimize the ambiguity inherent in virtually all forms of communication, I am also painfully aware that basic principles of interpretation, or hermeneutics to the non-legal world, can sometimes be used to demonstrate that "up" really means "down" or, as I believe the majority (in effect) does in this case, prove that "Yes, you may recover your costs," actually means "No, you may not."

The critical language at issue here is found in a single sentence and involves neither terms of art nor complex cross-references to other provisions. It clearly provides that upon modification of the valuation for assessment of his property, an appellant shall forthwith receive a refund of his costs. Because an appeal of a property assessment, depending upon the circumstances, might be heard by either the district court or the board of assessment appeals, the statute proceeds to indicate that the amount of that refund "may be fixed" either by the court or the board, as the case may be.

Use of the permissive term "may" in reference to the two alternate bodies to which the appeal may have been taken, especially when followed by the phrase, "as the case may be,"

is naturally understood to mean that the amount "may be fixed" by the court or it "may be fixed" by the board. It cannot reasonably be understood, however, to mean that despite mandating a refund of costs to the appellant earlier in the same sentence, the legislature now intends to allow the appropriate body to fix and award an amount of costs or not, at its choice. Even if the process of fixing an amount of costs could be understood to inherently involve some degree of discretion, rather than simply an accounting of expenditures, the statutory language could not possibly imply that the decision whether to award costs be nothing more than a matter of beneficence, as apparently contemplated by the majority.

Because I believe the statutory language makes perfect sense as written and the majority's elaborate construction simply carries it further and further from any reasonable understanding of that language, I respectfully dissent.