**CITY AND COUNTY OF DENVER, Colorado, a Colorado municipal corporation; and Denver County Board of Commissioners, Petitioners,**

v.

**BOARD OF ASSESSMENT APPEALS OF the STATE OF COLORADO; and Fire and Police Pension Association, Respondents.**

No. 99SC926.

Supreme Court of Colorado,
En Banc.

April 30, 2001.

As Modified on Denial of
Rehearing May 21, 2001.

J. Wallace Wortham, Jr., City Attorney, Alice J. Major, Assistant City Attorney, Denver, CO, Attorneys for Petitioner City and County of Denver, Colorado.

Ken Salazar, Attorney General, Mark W. Gerganoff, Denver, CO, Attorneys for Respondent Board of Assessment Appeals.

Malcolm M. Murray, Denver, CO, Attorney for Respondent Fire and Police Pension Association.

Justice HOBBS delivered the Opinion of the Court.

In this case, transferred from the court of appeals pursuant to C.A.R. 50,[1] we reverse a decision of the Board of Assessment Appeals (BAA). The question before BAA was whether the City and County of Denver (Denver) could tax the ownership interests of the Fire and Police Pension Association (FPPA) in real and personal property located within Denver. Denver challenges the validity of BAA's decision in favor of FPPA's exemption from ad valorem taxation. We reverse BAA's action because the General Assembly has not provided for FPPA's ownership interest in real or personal property to be exempt from ad valorem taxation.[2]

I.

Prior to 1978, each municipality and fire protection district in Colorado administered its own pension plans for retired police and fire protection personnel. In the mid 1970s, the General Assembly conducted a statewide viability study of these individual pension plans and found that collectively they had an unfunded liability of approximately $500 million. See Colorado Legislative Counsel, Research Publ. No. 229, Fire & Police Pensions 4 (1977). As a result, the General Assembly enacted sections 31–31–101 to –903, 9 C.R.S. (2000), creating FPPA to administer a statewide pension fund for retired police and fire protection personnel.

Under section 31–31–201(1), FPPA is "an independent public body corporate and politic," a "public instrumentality" exercising "an essential public function," and a "political subdivision of the state," but not "an agency of state government." Its duty and authority is to administer the fire and police pension fund statewide. See § 31–31–202(e). FPPA's board, appointed by the governor and confirmed by the senate, acts as trustee for the fund with "full and unrestricted discretionary power and authority to invest and reinvest" the fund's assets not "immediately required for the payment of refunds or benefits." See § 31–31–302(1).

FPPA owns real and personal property situated in Denver as part of the assets it administers to provide income for the fund. This property consists of retail and office buildings located in the Cherry Creek North district, and office furniture, equipment and other personal property housed therein.[3]

1. Under C.A.R. 50 we may transfer for our review a case pending in the court of appeals, before that court renders judgment.

2. The issues posed for review are: (1) "Whether the Fire and Police Pension Association (FPPA), as created under § 31–31–101 through § 31–31–903, C.R.S., is a 'county, city, or town or other municipal corporation' within the meaning of Colorado Constitution, Article X, § 4, such that property interests in the subject real and personal property held by the FPPA are exempt from *ad valorem* taxation"; (2) "Whether the property interests in the subject real and personal property held by the FPPA in trust for the benefit of the FPPA members are subject to *ad valorem* taxes regardless of whether the FPPA is a 'county, city, town or other municipal corporation' "; and (3)

"Whether the property interests in the subject property are taxable as possessory interests for two of the three years, 1995 and 1996, in issue according to the statutes in effect as of the assessment dates."

3. The real and personal property asserted to be taxable here consists of the following: (1) land and a retail/office building located at 100 Fillmore Street (real property schedule Nos. 5122–30–007 and 5122–30–011), and personal property also located at 100 Fillmore Street (personal property schedule No. 264–122–003); (2) a five-story parking garage, but not the land, located at 175 Milwaukee Street (real property schedule No. 5122–30–012); (3) a four-story, single-tenant retail building located at 2955 East First Avenue

FPPA rents this property to commercial tenants as part of its investment program for the fund. Whether this property is taxable is the question before us.

From 1993 to 1997, FPPA paid ad valorem taxes on the property to Denver. On December 31, 1997, FPPA filed with Denver fourteen petitions for abatement or refund of taxes it had paid for the tax years 1995 to 1997. In each petition, FPPA claimed its ownership interest in real and personal property was exempt from ad valorem taxation under Article X, section 4 and section 39-3-105, 11 C.R.S. (2000). The parties stipulated that the taxes at issue in this refund action amounted to $1,189,144.00 for the real property and $3,366.79 for the personal property. Following a hearing on June 10, 1998, Denver denied all of the petitions for refund or abatement.

FPPA appealed Denver's decision to BAA. BAA consolidated the petitions, held a hearing on August 3, 1999, and entered an order for exemption in favor of FPPA. Denver challenged the exemption decision. We reverse BAA's action.

## II.

We hold that the General Assembly has not provided for FPPA's ownership interest in real or personal property to be exempt from ad valorem taxation.

### A.

### Standard of Review

In reviewing the legality of a BAA order for tax exemption, we determine whether the exemption is provided by statute and is within an exemption category provided by Article X of the Colorado Constitution. *Board of County Comm'rs v. Vail Assocs., Inc.*, 19 P.3d 1263, 1275–76 (Colo.2001). Taxation is the rule and exemption the exception. *Howard Elec. & Mech., Inc. v. Department of Revenue*, 771 P.2d 475, 480 (Colo.1989).

In evaluating statutory tax exemptions, we generally accord a presumption of constitutionality to the General Assembly's enactments. *Vail Assocs.*, 19 P.3d at 1272–73. However, the legislature "may not exempt from taxation property which is not specified as exempt in Article X of the Colorado Constitution." *Denver Beechcraft, Inc. v. Board of Assessment Appeals*, 681 P.2d 945, 948 (Colo.1984).

Article X is not self-executing. Its implementation depends on exercise of the General Assembly's legislative authority. *Vail Assocs.*, 19 P.3d at 1273. In taxation matters, we commence our analysis with the statutory provisions. *See id.* at 1274–76. We must construe a statute to be constitutional, if possible. *Regional Transp. Dist. v. Colorado Dep't of Labor & Employment*, 830 P.2d 942, 945 (Colo.1992). Under the doctrine of stare decisis, we adhere to our prior construction of statutory and constitutional provisions, unless new provisions or changed conditions lead us to conclude that our prior construction is no longer sound. *Vail Assocs.*, 19 P.3d at 1274; *People v. Blehm*, 983 P.2d 779, 788 (Colo.1999).

In construing an act, we afford the statute's language its ordinary and common meaning, giving effect to every term and provision, including legislative definitions, while harmonizing potentially conflicting provisions, if possible. *Vail Assocs.*, 19 P.3d at 1272–73; *see also City of Durango v. Durango Transp., Inc.*, 807 P.2d 1152, 1157 (Colo. 1991) (holding that courts must consider the object to be accomplished and the mischiefs to be avoided); *Regional Transp. Dist.*, 830 P.2d at 946. Unless the statutes and the constitution place the property within a stated category of exemption, we resolve doubts regarding the meaning of statutes and the constitution in favor of subjecting the property to payment of its fair proportion of taxation. *Vail Assocs.*, 19 P.3d at 1272–73.

With these principles in view, we commence with our statutory analysis.

### B.

### Exemption from Taxation for Political Subdivision Property Ownership

We first point out the different phrasing of the statutory exemption provision from that

---

(real property schedule No. 5122–30–013); and (4) a four-story retail/restaurant/office building located at 158 Fillmore Street, and a five story retail building and parking structure located at the same address (real property schedule Nos. 5122–30–017 and 5122–30–018).

of the constitution. Section 39–3–105 states that the "[p]roperty, real and personal, of public libraries, and of the state and its political subdivisions, including school districts or any cooperative association thereof, shall be exempt from the levy and collection of property tax." Article X, section 4 of the Colorado Constitution provides that: "The property, real and personal, of the state, counties, cities, towns and other municipal corporations and public libraries, shall be exempt from taxation." *See also Address to the People, in Proceedings of the Constitutional Convention, Colorado 1875–76* 723, 729 (1907).

Prior to 1964, the taxation statutes mirrored the exemption language of Article X, section 4, providing an exemption from taxation for the "Property, real and personal, of the state, counties, cities, towns, and other municipal corporations, and public libraries." *See, e.g.,* § 137–1–3(5), C.R.S. (1963). In 1964, as part of a general revision of Colorado's tax code, the General Assembly amended this provision to its present formulation utilizing the term "political subdivision" in lieu of the specific wording of the constitution. *See* ch. 94, sec. 1, § 137–2–1, 1964 Colo. Sess. Laws 680. In doing so, the General Assembly defined for tax code purposes the term "political subdivision" to mean entities of government "authorized by law to impose ad valorem taxes on taxable property located within its territorial limits." *Id.* § 137–1–1(10), at 675.

Thus, the General Assembly intended its statutory tax exemption provision to encompass real and personal property owned by governmental entities that have the power to levy taxes or whose statutory design includes ad valorem taxation to carry out its public purpose. The legislature had a legitimate public policy and constitutional basis for doing so. The provisions of Article X, section 4, enunciate a policy that government should not tax public property, because to do so would be to diminish public revenues available to carry out public purposes:

> [A]s the sovereign power, the state, through its officers or through the municipalities it creates, receives the revenue from the taxes levied and collected, and,

from the means thus furnished, discharges the duties and pays the expenses of government. Its property constitutes one of the instrumentalities by which it performs its functions. Since every tax would to a certain extent diminish its capacity and ability, the courts have generally been unwilling to hold that such property is subject to taxation in any form.

*Game & Fish Comm'n v. Feast,* 157 Colo. 303, 310, 402 P.2d 169, 172 (1965).

The General Assembly's decision to employ the term "political subdivision" in its exemption provision also has a legitimate policy and legal basis. Counties, towns, cities, and other municipal corporations—entities mentioned in Article X, section 4—are political subdivisions of the state. So are other governmental entities that Colorado, through its constitution and statutes, has created to carry out the work of government on behalf of Colorado citizens. Due to Colorado's growth and need for public services in an ever complex society, new forms of Colorado government have evolved since the adoption of Colorado's Constitution. Consistent therewith, the General Assembly has utilized its plenary taxation authority to implement the foundational principle of Article X, section 4, that governmental ownership of public property is exempt from ad valorem taxation.

In a number of cases, we have addressed the General Assembly's role in creating political subdivisions directly or by providing for their creation under authorizing statutes, which describe how they are created, along with their powers and duties. *See, e.g., Anema v. Transit Constr. Auth.,* 788 P.2d 1261 (Colo.1990); *Hazlet v. Gaunt,* 126 Colo. 385, 250 P.2d 188 (1952). Political subdivisions created directly by the General Assembly or through enabling legislation may implicate matters of statewide concern, or local concern, or both.

Municipal corporations generally have a predominantly local focus. In *Regional Transportation District,* 830 P.2d at 947, we observed that "[t]he distinction between municipal functions, implicating the right to local self-government over local services, and functions affecting matters of concern to citi-

zens beyond the boundaries of the government engaged in the functions cannot be made by application of any bright line rule." Adopting what we described as a "functional approach," we distinguished "truly local" functions affecting only those residing within the boundaries of a local "governmental unit" from those which affect the larger state-wide public. *Id.* at 946.

Within the separation of powers framework, the General Assembly's legislative role thus includes, with the exception of home rule cities and counties established pursuant to Colorado's constitution, *see* Colo. Const. art. XX, § 6; art. XIV, § 16, the establishment, reorganization, or dissolution of subsidiary governmental entities it deems necessary and convenient to implement public purposes. *See City of Greenwood Vill. v. Petitioners for the Proposed City of Centennial,* 3 P.3d 427, 437–38 (Colo.2000). Authorities on local government law recognize that municipal corporations have definite geographical boundaries. *See* Osborne M. Reynolds, *Local Government Law* 17–18 (1982). Other governmental entities, however, may be created to carry out state administration, and may have local boundaries, such as counties, or be statewide in scope for statewide purposes. *See* 1 Eugene McQuillin, *The Law of Municipal Corporations* § 2.07.10, at 144–45 (3d ed.1999).

For tax purposes, the General Assembly may designate those political subdivisions of the state for which it intends governmental ownership of property to be tax exempt as "property of the state" under Article X, section 4. *Denver Beechcraft,* 681 P.2d at 949. There, we upheld a tax exemption for a political subdivision, in that case an airport authority, which the General Assembly determined to have a mixed statewide and local public purpose. *Id.* Although airport authorities are established by counties, or by counties and cities acting in combination with each other, § 41–3–104, 11 C.R.S. (2000), the General Assembly declared: (1) that their public function of promoting and facilitating air transportation within the state has statewide importance, § 41–3–102; and (2) that the property they own is tax exempt,

§ 41–3–107, even though airport authorities have no taxing powers, § 41–3–106.

The district court in *Denver Beechcraft* had found the tax exemption unconstitutional because airport authorities did not fit within the term "municipal corporation" as utilized in Article X, section 4. However, giving effect to the statutory provision for their tax exemption, we held that the exemption category of Article X, section 4, for "property of the state" was applicable. *Denver Beechcraft,* 681 P.2d at 949. Section 41–3–107 provides:

(1) An authority created pursuant to this article is hereby declared to be a political subdivision of the state, exercising essential governmental powers for a public purpose. The general assembly, therefore, finds:

(a) That no authority, or county independently creating an authority, shall be required to pay any general ad valorem taxes upon an airport or any facilities connected therewith located within the state nor upon the interest of the authority therein;

(b) That bonds issued under this article and the income therefrom shall be free and exempt from taxation by the state, or any political subdivision of the state, with the exception of transfer, inheritance, and estate taxes.

In relying on this provision and the legislatively declared statewide public purpose of airport authorities, we found that the purpose of Article X, section 4 was "to exempt public property from property tax." *Denver Beechcraft,* 681 P.2d at 948–49. We concluded that the property of political subdivisions serving important statewide interests is tax exempt, if the General Assembly has sufficiently provided for the political subdivision's property to be property of the state for Article X, section 4 purposes:

Although the airport authority's property is not state property, there is no reason that the property of a political subdivision of the state should not be exempt from taxation under Article X, § 4 as "property ... of the state."

*Id.* at 949. We did not require that the property had to be the property of a state agency for the tax exemption to apply. Nor

did we require the property to be the property of a town, city, county, or municipal corporation, or that the political subdivision qualify as a municipal corporation.

In determining that airport authorities qualified for a tax exemption under the statutes and the constitution, we distinguished the public purposes of the airport authority from an irrigation district whose purpose was "chiefly private . . . for the benefit of private landowners." *Id.* at 948; *see also Campbell v. Orchard Mesa Irrigation Dist.*, 972 P.2d 1037, 1040 (Colo.1998); *Logan Irrigation Dist. v. Holt*, 110 Colo. 253, 259, 133 P.2d 530, 532 (1943). In both *Campbell* and *Logan* we pointed out that the essential purpose of an irrigation district is to serve and enhance the value of private lands and landowners:

> While an irrigation district is a public corporation, we do not think that it is in any true sense a branch or subdivision of the sovereignty. Its purposes are chiefly private, and for the benefit of private land owners. . . . It would seem that, in order to come within the rule which will permit the court to consider the property of a public corportion the property of the state for the purpose of exemption from taxation, such corporation should be so closely engrafted upon the state as to in fact exercise governmental functions and be supported, directly or indirectly, by the state.

*Logan*, 110 Colo. at 259, 133 P.2d at 532–33 (citations omitted).[4] In contrast, airport authorities are Colorado governmental entities established to carry out legislatively described public purposes.

### C.

### Tax Exemption for FPPA Property Ownership

■ We now examine whether the real and personal property owned by FPPA qualifies for tax exemption under our holding in *Denver Beechcraft*. As with airport authorities, the General Assembly has declared FPPA to be a political subdivision of the state, established for a public purpose

and benefiting the state as a whole, as well as local government. Similarly, the FPPA legislative declaration states that "the establishment of police officers' and firefighters' pension plans in this state is a matter of statewide concern that affects the public safety and general welfare." § 31–31–101; *see also Greeley Police Union v. City Council of Greeley*, 191 Colo. 419, 421, 553 P.2d 790, 791 (1976) (holding that an amendment to the city charter that provided for binding arbitration for labor disputes arising from collective bargaining for the municipal police involved a matter of both state and local concern).

■ We consider legislative declarations when construing a statute. *State v. Nieto*, 993 P.2d 493, 502 (Colo.2000) (stating that legislative intent is the polestar of statutory construction). The similarity between the airport authority's legislative declaration in section 41–3–102, and the legislative declaration concerning FPPA set forth by section 31–31–101 is striking. Without question, fire and police personnel perform a vital public purpose in protecting the health and safety of Colorado's citizens. Like the salary of an active duty firefighter or police officer, pension programs for firefighters and police officers attract these persons to the performance of an essential public service of statewide significance.

Likewise, FPPA holds property dedicated to supporting local government and promoting the welfare of the state as a whole. In *Denver Beechcraft*, 681 P.2d at 949, we found that an airport authority was "designed to accomplish a public purpose with public property held by a political subdivision of the state." Under the statute in *Denver Beechcraft*, local governing bodies of cities, towns, counties, or a combination thereof created the airport authority; and, "[a]lthough the airport authority's property was not state property," we nevertheless found it to be tax exempt under Article X, section 4, as "property . . . of the state." *Id.*

---

**4.** BAA focused on characterizing FPPA as a municipal corporation under Article X, section 4; however, *Denver Beechcraft* does not require that a political subdivision also be a municipal corporation for the exemption to apply.

Like the airport authority, FPPA does not have the power to levy taxes, nor does its statutory design include ad valorem taxation. Like the airport authority, it has power to receive and expend state funds and local government funds contributed to it. §§ 31-31-301, -302. Indeed, the funds which the employing governmental entities contribute to FPPA are public funds derived from the exercise of taxing authority.

However, one distinction of controlling importance in the case before us exists between airport authorities and FPPA. The General Assembly has not made provision for FPPA to be exempt from ad valorem taxation under the "property of the state" category of exemption under Article X, section 4. Despite the fact that airport authorities did not fall within the tax code's definition of "political subdivisions" for exemption purposes by reason of having ad valorem taxation authority, *see* §§ 39-1-102(12), -3-105, the General Assembly included in the airport authority statute a provision for their tax exemption. *See* § 41-3-107. It is clear that we relied on this provision in reaching our result in *Denver Beechcraft*:

> Since airport authorities are political subdivisions of the state, both section 41-3-107 and section 39-3-101(1) (d) are constitutional if the General Assembly may exempt from taxation property of political subdivisions of the state.

\* \* \*

We uphold the validity of section 41-3-107, 17 C.R.S. (1973), reverse the district court's ruling, and remand this case to the district court for reinstatement of the Board of Assessment Appeals decision and for such other proceedings as are consistent with this opinion.

*Denver Beechcraft*, 681 P.2d at 948-49.

The general Assembly has not enacted a similar provision for FPPA. FPPA and BAA argue that section 31-31-203 sufficiently parallels the airport authority tax exemption provision. However, a comparison of the language of the two provisions and our case law plainly demonstrates their differences. Section 31-31-203 provides:

Except for assignments for child support purposes as provided for in sections 14-10-118(1) and 14-14-107, C.R.S., as they existed prior to July 1, 1996, for income assignments for child support purposes pursuant to section 14-14-111.5, C.R.S., for writs of garnishment that are the result of a judgment taken for arrearages for child support or for child support debt, and for payments made in compliance with a properly executed court order approving a written agreement entered into pursuant to section 14-10-113(6), C.R.S., no portion of the funds created pursuant to sections 31-31-301, 31-31-502, and 31-31-703, before or after their order for distribution by the board to the persons entitled thereto, shall be held, seized, taken, subjected to, detained, or levied on by virtue of any attachment, execution, injunction, writ, interlocutory or other order or decree, or process or proceeding whatsoever issued out of or by any court of this state for the payment or satisfaction, in whole or in part, of any debt, damage, claim, demand, or judgment against the fire and police pension association or employers that belong to such association or the beneficiary of such funds. The funds shall be held and distributed for the purpose of this article and for no other purpose whatsoever.

We have previously construed the language of section 31-30.5-208 which mimics that of section 31-31-203—as "obviously intended to protect the pension funds from attachment and levy by creditors." *Conrad v. City of Thornton*, 191 Colo. 444, 449, 553 P.2d 822, 826 (1976). Thus, section 31-31-203 embodies the familiar proposition that public property is not subject to attachment and levy by creditors to satisfy debts. *See, e.g., City of Eufaula v. Meyer*, 169 F.2d 463, 464 (10th Cir. 1948)(holding that public policy prevents the forced sale of publicly owned property to pay improvement district assessments).

■ The Legislature's plenary taxation powers include providing definitions for taxable or exempt property. *See Vail Assoc.*, 19 P.3d at 1272-73. In the case before us, we hold that the legislature's definitions do not provide that the real and personal property of FPPA, which Denver has subjected to ad valorem taxation, is exempt from taxation as

property of the state. We conclude that General Assembly did not intend property owned by FPPA invested for the benefit of the pension fund to be tax exempt as property of the state. We therefore hold that FPPA is not entitled to refund or abatement of ad valorem taxes it paid to the City and County of Denver.[5]

### III.

Accordingly, we reverse the action of BAA and remand this case to it, with directions to dismiss FPPA's petitions for refund or abatement of the taxes it paid to Denver.

---

5. We agree with Denver that FPPA is not a municipal corporation, because it does not have local geographical boundaries. However, the statutory designation of tax exemption we held to be constitutional in *Denver Beechcraft* does not depend upon a political subdivision also qualifying as a municipal corporation. We emphasize that we do not have before us any question concerning tax exemption for entities that qualify as municipal or quasi-municipal corporations or any question of the General Assembly eliminating tax exemption for municipal corporations, an issue which would place in contention the power of the legislature to revoke a category of exemption contained in Article X, section 4.