COLORADO COURT OF APPEALS                                    **2016COA182**

Court of Appeals No. 15CA1824
Larimer County District Court No. 13PR30246
Honorable Devin R. Odell, Judge

Barry L. Bruce,

Attorney-Appellant,

v.

Jay A. Roberts and Ashley Roberts McNamara, as Co-Trustees of the Della I.
Roberts Trust,

Petitioners-Appellees.

ORDER VACATED IN PART AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE NAVARRO
Webb and Hawthorne, JJ., concur

Announced December 15, 2016

Jackson Kelly PLLC, John S. Zakhem, John L. Skari, Jr., Benjamin Ross,
Denver, Colorado, for Appellant

Davis Graham & Stubbs LLP, John M. Bowlin, Denver, Colorado, for Appellees

¶ 1     A Colorado court must award attorney fees against a party who presents the court with a claim or defense lacking substantial justification.  § 13-17-102(2), C.R.S. 2016.  But can a Colorado court award fees under section 13-17-102 for an unjustified claim presented to a foreign court?

¶ 2     This question is raised by appellant, Barry L. Bruce, an attorney assessed with opposing counsels' fees under section 13-17-102 for legal work performed in both the underlying Larimer County estate matter and a collateral action in West Virginia.  Relying on the language of section 13-17-102 and *Board of County Commissioners v. Kraft Building Contractors*, 122 P.3d 1019 (Colo. App. 2005), Bruce argues that the district court lacked authority to award attorney fees incurred solely in the West Virginia case.  Appellees, Jay A. Roberts and Ashley Roberts McNamara, respond that *In re Estate of Leslie*, 886 P.2d 284, 288 (Colo. App. 1994), supports the court's award.

¶ 3     We conclude that *Kraft* properly applied the plain language of section 13-17-102 and that *Leslie* is distinguishable.  To the extent that *Leslie* may conflict with our decision, however, we decline to follow that case.  Following *Kraft* instead, we vacate the district

1

court's order as it pertains to attorney fees incurred in the West Virginia action and remand for further proceedings.

## I. Facts and Proceedings

¶ 4 In 1996, Della Roberts, assisted by her son James Roberts, formed the Della I. Roberts Trust in Colorado, where she lived. She died eight days later.

¶ 5 Upon Della's death, James, the designated trustee, was supposed to divide the trust's assets into two equal shares. The first share was intended to benefit James and his wife, Mary Sue Roberts. The second share was intended to benefit Della's grandchildren, the children of James and Mary Sue. The trust instrument further provided that James was to distribute to Della's grandchildren "at least monthly and in equal amounts, all of the net income from their trust share."

¶ 6 James did not properly administer the trust. Apparently, however, no one expressed concern over his administration until after he died in October 2012. Upon his death, Mary Sue assumed the role of trustee pursuant to the trust's provisions. As such, she was supposed to distribute equally all principal remaining from the trust's second share to Della's grandchildren. But a majority of the

grandchildren promptly removed Mary Sue as trustee (as permitted by the trust instrument), citing concerns that trust assets had already been squandered and she might not properly distribute any remaining assets. These grandchildren then sought the trust's financial records and a corporate fiduciary willing to assume the role of trustee.

¶ 7 Unable to obtain either the financial records or a willing corporate fiduciary, two grandchildren — Jay A. Roberts and Ashley Roberts McNamara — brought this probate action on behalf of the trust. (We will refer to them as "trustees" because they were ultimately appointed trustees.) Their initial petition sought an order appointing a successor trustee. They then sought the records necessary to complete a historical accounting for the trust, marshal and distribute the remaining assets, and finally dissolve the trust.

¶ 8 Mary Sue objected to the petition on jurisdictional grounds. Citing her and James's move from Colorado to West Virginia in 1999, she argued that West Virginia courts had exclusive jurisdiction over the trust. In June 2013, the district court rejected the jurisdictional challenge and concluded that Larimer County, Colorado, was the appropriate venue.

¶ 9    Meanwhile, Mary Sue filed a separate case in West Virginia state court. She asked that court to assume jurisdiction over the trust, and she sought (among other things) a temporary restraining order and an injunction to prevent dissolution of the trust. Trustees removed the case to the federal district court in West Virginia. After a hearing, the federal court dismissed the West Virginia action in November 2013, concluding that "jurisdiction over the trust is properly in Colorado." Mary Sue appealed this decision to the Fourth Circuit but then voluntarily dismissed her appeal. The record does not reveal whether trustees sought an attorney fees award from the federal courts in the West Virginia action. On appeal, Bruce asserts that trustees did not apply for fees in the federal courts; trustees have not disputed his assertion.

¶ 10    Back in Colorado, the district court accepted a final accounting of the trust filed by trustees, ordered all assets remaining in the trust be distributed to the grandchildren in equal shares, and found that the trust could recover administrative costs and attorney fees incurred in litigating both the Colorado and West Virginia cases, pursuant to section 13-17-102.

¶ 11    Bruce represented Mary Sue in both the Colorado and West Virginia matters.  The district court awarded attorney fees for the Colorado matter ($7325) in favor of the trust and against both Bruce and Mary Sue's local counsel, jointly and severally.  The court assessed fees against Bruce for the West Virginia action ($54,565).

## II.    Analysis

¶ 12    Bruce appeals the district court's order only as it pertains to attorney fees awarded for the West Virginia action.  He contends that section 13-17-102 did not authorize the court to award attorney fees incurred solely in the West Virginia case.[1]  Based on the plain language of the statute, Bruce is right, except to the extent that trustees used in this case any work product created for the West Virginia federal action.  Because the record does not reveal whether they did so, further proceedings are necessary to address

---

[1] Bruce seems to present two claims in his opening brief: (1) the district court lacked authority to impose fees incurred in the West Virginia case and (2) the court did not conduct the proper inquiry to determine the amount of the award.  He acknowledges in his reply brief, however, that "[t]he only issue before this Court is whether the Trial Court has jurisdiction to award attorneys' fees billed in a case before the Federal District Court of the Southern District of West Virginia."

this exception.  For these reasons, we vacate the order in part and remand for resolution of this question.

### A.     Relevant Law and Standard of Review

¶ 13     A court considering whether to award attorney fees must begin with the American Rule, "which precludes an award of attorney fees absent a specific contractual, statutory, or procedural rule providing otherwise."  *City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo. 2005); *see L & R Expl. Venture v. CCG, LLC*, 2015 COA 49, ¶ 20 (stating that Colorado follows the American Rule requiring each party in a lawsuit to bear its own legal expenses).  Article 17 of title 13 specifically provides otherwise and sets forth a limited basis for awarding attorney fees.  As relevant here, section 13-17-102 authorizes an attorney fees award if a court finds an attorney or party brought or defended a civil action that "lacked substantial justification," either in whole or in part.  § 13-17-102(2); *see* § 13-17-102(4) (defining the phrase "lacked substantial justification").

¶ 14     But does section 13-17-102 also authorize a Colorado court to award attorney fees for frivolous litigation occurring not in that court but in a separate (though related) matter occurring in a

foreign court?[2]  This question presents a statutory interpretation issue that we review de novo.  *Sperry v. Field*, 205 P.3d 365, 367 (Colo. 2009); *see also Madison Capital Co. v. Star Acquisition VIII*, 214 P.3d 557, 560 (Colo. App. 2009) ("We review de novo the legal analysis employed by the trial court in reaching its decision to award attorney fees.").

¶ 15    The primary goal of statutory interpretation is to ascertain and give effect to the General Assembly's intent.  *St. Vrain Valley Sch. Dist. RE-1J v. A.R.L.*, 2014 CO 33, ¶ 10.  To determine this intent, we look first to the statute's plain language.  *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004).  "[W]e must accept the General Assembly's choice of language and not add or imply words that simply are not there."  *People v. Benavidez*, 222 P.3d 391, 394 (Colo. App. 2009).  We must also read the language in the context of the statute as a whole, giving consistent, harmonious, and sensible effect to all its parts.  *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010); *see also Copeland v. MBNA Am. Bank, N.A.*, 907 P.2d 87, 90 (Colo. 1995) ("[A] statute should be

---

[2] Bruce does not contest the district court's finding that the defense asserted in this case and the claim presented in the West Virginia case both lacked substantial justification.

7

interpreted in a manner that gives effect to all its provisions and policy objectives, and not in a way that renders one or more of its parts or goals inoperative.").

## B. Application

### 1. District Court's Reasoning

¶ 16    In its "Order Regarding Attorney Fees," the district court concluded that, unlike subsections (1) and (2) of section 13-17-102, subsection (4) granted broad authority to award attorney fees incurred in any civil action, even an action not litigated in a Colorado court. The court explained:

> Nothing in this subsection [(4)], in contrast to C.R.S. § 13-17-102(1) and (2) (requiring that an award must be "in any civil action of any nature commenced or appealed in any court of record in this state"), limits the term "an action" to an action in Colorado state court and thus it does not preclude, by its plain language, an award of attorney fees in a Colorado case that were incurred in an action in another jurisdiction, as long as that action affected the Colorado "proceeding."
>
> In this case, the Court found that the West Virginia action was "a bad faith effort to delay and impede the [trustees'] efforts to resolve the issues before this Court." In other words, the Court finds that the West Virginia litigation — as a frivolous attack on this Court's jurisdiction — lacked substantial justification,

8

was interposed for delay, and unnecessarily expanded this proceeding and therefore falls within the term "an action" in C.R.S. § 13-17-102(4).[3]

Although the Court can find no precedent for such an award, it determines, given its exclusive jurisdiction over the Trust, as well as its broad equitable powers in resolving issues regarding the Trust, and the fact that it has a complete record of the full scope of this litigation (unlike the federal district court, which limited its consideration to the issue of jurisdiction), that it is appropriate in this case for the Court to assess attorney fees incurred in the related West Virginia action.

¶ 17    The district court's conclusion, however, conflicts with *Kraft*. There, a division of this court considered an action filed in Colorado state court, removed to federal court, and remanded back to state

---

[3] While the district court found that Bruce filed the West Virginia case to delay these Colorado proceedings, the court did not describe how the West Virginia case actually delayed these proceedings or expanded them. The appellate record does not show (and the parties do not assert) that the court stayed this case pending resolution of the West Virginia case or that the West Virginia case affected the resolution of this case in any other tangible way — other than the effort associated with trustees' request for an award of attorney fees incurred in West Virginia. Although section 13-17-102, C.R.S. 2016, would have permitted the district court to award fees incurred for additional litigation in this case that was caused by the West Virginia matter (if any had occurred), the statute did not authorize the award for fees incurred *in the West Virginia case* unless those fees related to work product also used in this case, as we shall explain.

court. *Kraft*, 122 P.3d at 1021. On remand, the Colorado district court awarded defendants attorney fees for work performed at all stages of the litigation pursuant to section "13-17-101, et seq." *Id.*[4] The award included fees for actions taken while the matter was pending in federal court. *Id.* at 1021-22.

¶ 18 On appeal, the plaintiff contended that the trial court lacked authority to award attorney fees incurred solely in the federal court proceedings. *Id.* at 1022. The Kraft division agreed and held that section "13-17-101, et seq." — which includes section 13-17-102 — did not authorize an award of attorney fees incurred for work performed in the federal court unless the work product was also used in the state proceedings. *Id.* at 1026.[5] Another division of this

---

[4] The trial court in *Board of County Commissioners v. Kraft Building Contractors*, 122 P.3d 1019 (Colo. App. 2005), also awarded fees under C.R.C.P. 11 and C.R.C.P. 121, section 1-15(7). Because those rules are not at issue here, we simply discuss *Kraft*'s application of the statutes.

[5] In support, the division pointed to analogous cases from other jurisdictions: *Major v. First Virginia Bank-Central Maryland*, 631 A.2d 127 (Md. Ct. Spec. App. 1993), and *Lopez-Flores v. Hamburg Township*, 460 N.W.2d 268 (Mich. Ct. App. 1990). Both cases rejected fee awards for legal work conducted solely before a federal court, with one concluding that such awards should be left to the judge presiding over the federal action, "not a [state] court judge

court has followed *Kraft.* *See Kennedy v. King Soopers Inc.*, 148 P.3d 385, 389 (Colo. App. 2006) ("A state court may award attorney fees for work in federal court if the work produced during the federal proceedings is also used in the state court proceedings.").

¶ 19 The plain language of section 13-17-102 supports the holding of *Kraft.* Subsection (2) requires a Colorado court to award attorney fees in any civil action brought in that court if such action or a defense thereto lacked substantial justification:

> Subject to the limitations set forth elsewhere in this article, in any civil action of any nature *commenced or appealed in any court of record in this state*, the court shall award, by way of judgment or separate order, reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification.

§ 13-17-102(2) (emphasis added); *see also* § 13-17-102(1) ("Subject to the provisions of this section, in any civil action of any nature *commenced or appealed in any court of record in this state*, the court may award, except as this article otherwise provides, . . . reasonable attorney fees.") (emphasis added).

---

who had no jurisdiction over that case." *Lopez-Flores*, 460 N.W.2d at 270.

¶ 20 Subsection (4), read in harmony with subsections (1) and (2), clarifies the process for invoking the court's authority to award fees and the conduct for which the court may exercise that authority:

> The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under the Colorado rules of civil procedure or a designation by a defending party under section 13-21-111.5(3) that lacked substantial justification. As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

§ 13-17-102(4).

¶ 21 In other words, subsection (4) does not grant a court the authority to assess attorney fees that could not be awarded under subsections (1) and (2). Instead, subsections (1) and (2) provide general authority to award attorney fees for claims or defenses lacking substantial justification, while subsection (4) specifies the process and conduct for which a court may assess fees. In this

12

way, the subsections operate together to set the parameters and criteria for an attorney fees award. *Cf. Upper Black Squirrel Creek Ground Water Mgmt. Dist. v. Cherokee Metro. Dist.*, 2015 CO 47, ¶ 22 (reading subsections (2) and (4) together to determine a court's authority to award attorney fees under section 13-17-102). As a result, the limits on the court's authority set forth in subsections (1) and (2) — including the criterion that the unjustified claim or defense was presented in a Colorado court — apply with equal force to subsection (4). *Cf. Colo. Citizens for Ethics in Gov't v. Comm. for the Am. Dream,* 187 P.3d 1207, 1220 (Colo. App. 2008) (recognizing that section 13-17-102's criterion that the action occur in a court of record in this state, which appears in subsections (1) and (2), applies to subsection (5)).

¶ 22    Simply put, if the limits of subsections (1) and (2) did not apply to subsection (4), those limits would lose any practical effect; a court could always award fees under subsection (4) without regard to those limits. We must eschew a statutory interpretation that robs the language of any impact. *See People v. Terry,* 791 P.2d 374, 376 (Colo. 1990) ("Courts should attempt to give effect to all

13

parts of a statute, and constructions that would render meaningless a part of the statute should be avoided.").

¶ 23     Section 13-17-101, C.R.S. 2016, which articulates the legislative purpose of section 13-17-102, illustrates further that the limits of subsections (1) and (2) of section 13-17-102 apply to subsection (4).  *See Johnson v. People*, 2016 CO 59, ¶¶ 17-18 (To determine the plain meaning of a statute, "[w]e read statutory words and phrases in context, and we construe them according to the rules of grammar and common usage.  In addition, we must interpret a statute so as to effectuate the purpose of the legislative scheme.") (citation omitted); *City & Cty. of Denver v. Bd. of Assessment Appeals*, 30 P.3d 177, 183 (Colo. 2001) ("We consider legislative declarations when construing a statute.").

¶ 24     Section 13-17-101 provides: "The general assembly recognizes that *courts of record of this state* have become increasingly burdened with litigation which is straining the judicial system and interfering with the effective administration of civil justice." (Emphasis added.)  In response to this concern, "the general assembly hereby sets forth provisions for the recovery of attorney fees in courts of record when the bringing or defense of an action,

or part thereof . . . , is determined to have been substantially frivolous, substantially groundless, or substantially vexatious." *Id.* Our supreme court has also explained that "[t]he General Assembly enacted section 13-17-102 because *our courts* are burdened with unnecessary litigation that interferes with the effective administration of civil justice." *In re Marriage of Aldrich*, 945 P.2d 1370, 1378 (Colo. 1997) (emphasis added). In light of this legislative purpose, interpreting section 13-17-102 to authorize an attorney fees award based on a claim or defense presented to a *different* jurisdiction's court would be anomalous.

¶ 25    Therefore, the district court's order rests on an erroneous interpretation of the law and clashes with *Kraft* and *Kennedy*.

¶ 26    Trustees, however, do not rely on the court's interpretation. Instead, they advance a different view of section 13-17-102 to justify the award of attorney fees incurred in the West Virginia action. We now turn to their contentions.

2.    Trustees' Arguments

a.    Arguments Based on Section 13-17-102

¶ 27    Trustees acknowledge that the limits of subsections (1) and (2) apply to a court's authority to assess attorney fees under

15

subsection (4) of section 13-17-102. But trustees contend that, while subsections (1) and (2) limit *in* what civil action a court may award attorney fees (one in a Colorado court of record), those subsections do not limit *for* what action a court may award fees. Trustees maintain that, under section 13-17-102, "[t]here are no limits to 'an action' for which the court may award fees," so long as the Colorado court enters the fees order in a Colorado case. Accordingly, trustees conclude that the district court here complied with the statute because "[i]t awarded fees in this Colorado action."

¶ 28 By its terms, however, section 13-17-102 refers to Colorado courts. *See also* § 13-17-101; *Aldrich*, 945 P.2d at 1378. Trustees thus read the limits of subsections (1) and (2) as doing no more than restricting a Colorado court's authority to award attorney fees to a case *in* that Colorado court — as opposed, presumably, to a Colorado court's entering a fees order in another jurisdiction's case (e.g., issuing an order in the West Virginia case). But that restriction is obvious and unnecessary to express, so much so that the limits set forth in subsections (1) and (2) would be superfluous under such a narrow view of their import. Again, "[w]e must avoid constructions that would render any words or phrases

16

superfluous[.]" *Johnson,* ¶ 18.  To have meaning, subsections (1) and (2) must restrict a Colorado court's authority to awarding attorney fees incurred in response to unjustified conduct occurring "in any civil action of any nature commenced or appealed in any court of record in this state." § 13-17-102(2).

¶ 29    Trustees also point to *In re Marriage of Ward,* 183 P.3d 707 (Colo. App. 2008).  In that case, however, the division concluded that the trial court could award attorney fees under section 13-17-102 for work done in New York *that was used in a Colorado action.  See id.* at 708-09.  The father employed a New York attorney to investigate and procure records showing that he had satisfied an earlier New York order to pay child support.  This fact reinforced the father's defense to the mother's request for a support judgment in the Colorado case, which she had based on the New York order. *See id.* at 709; *see also Cherry Creek Sch. Dist. No. 5 v. Voelker,* 859 P.2d 805, 808-09 (Colo. 1993) (holding that the trial court had authority to award costs for out-of-state depositions necessary to prepare for the Colorado trial) (cited in *Ward*).  Hence, *Ward* meshes well with *Kraft* and our analysis but does not bolster trustees' claim.

¶ 30    Finally, trustees rely heavily on *Leslie*, decided by a division of this court.  There, a district court in an estate matter cited section 13-17-102 as support for awarding attorney fees incurred in actions before a Colorado court and a federal court.  *See Leslie*, 886 P.2d at 286-88.  But *Leslie* did not specifically address a court's authority to award fees incurred solely in a foreign jurisdiction.  *Leslie* seemed to assume such authority existed, without discussion, because that was not the issue presented.

¶ 31    Instead, *Leslie* focused on whether a court may charge attorney fees against a petitioner's share of an estate when those fees were incurred in defense against the petitioner's frivolous litigation.  *See id.* (recognizing that the Colorado Probate Code does not provide such authority).  *Leslie* found such authority in section 13-17-102 and drew no distinction between litigation occurring in the Colorado court and the federal court.  (*Leslie* then examined the courts' orders in the state and federal cases and decided that the actions brought in those courts were frivolous or groundless, even though those courts had made no such findings expressly.)  Therefore, *Leslie* offers little guidance on the legal issue before us.

¶ 32    To the extent, however, that *Leslie* permits a Colorado court to award attorney fees incurred in another jurisdiction's case even where work product created for the other case was not used in Colorado, *Leslie* clashes with the plain language of section 13-17-102 discussed above.[6]  *Leslie* is also troubling for other reasons:

- *Leslie* contradicts the sound logic that "it is ordinarily 'the court in which services were rendered that should determine the amount of attorney fees awardable.'" *Kraft*, 122 P.3d at 1026 (quoting *Lopez-Flores v. Hamburg Twp.*, 460 N.W.2d 268, 270 (Mich. Ct. App. 1990)).

- *Leslie* opens the door to an attorney fees award for conduct in a foreign action where the foreign court declined to — or could not — impose such sanctions. For instance, the record here does not show, and trustees do not assert, that they sought fees in West Virginia and complied with Fed. R. Civ. P. 11(c)(2) when doing so. That rule contains a safe harbor provision requiring a

---

[6] *Leslie* did not mention whether the attorney fees incurred in the federal action pertained to work product also used in the state action.

19

party to give notice that it intends to seek attorney fees as a sanction for a frivolous filing. *Id.* Opposing counsel may then withdraw or correct the challenged filing and avoid the imposition of attorney fees. *Id.* Given their apparent failure to comply with Federal Rule 11, trustees seek to recover in this Colorado case their attorney fees incurred in the West Virginia case even though the federal court could not have awarded those fees in that federal action. The Colorado legislature surely did not intend section 13-17-102 to authorize such a result.[7]

¶ 33 Consequently, to the extent *Leslie* conflicts with *Kraft* and our statutory analysis, we decline to follow *Leslie*. *See City of*

---

[7] Bruce is mistaken, however, in claiming that Fed. R. Civ. P. 11 "preempts" a Colorado court's authority to award attorney fees under section 13-17-102. Federal Rule 11 applies only to federal courts. *Cf. McCoy v. West*, 965 F. Supp. 34, 35 (D. Colo. 1997) ("[T]o the extent Colo.Rev.Stat. § 13–17–101 et seq. is inconsistent with the procedural safe-harbor provisions of Rule 11, it is preempted. '[A] federal district court in a diversity case is neither required, nor indeed permitted, to apply state law to a matter covered by a Federal Rule of Civil Procedure.'") (citation omitted). Still, it would be incongruous for a Colorado court to award attorney fees for an action in federal court where the federal court could not do so.

*Steamboat Springs v. Johnson*, 252 P.3d 1142, 1147 (Colo. App. 2010) ("We are not bound to follow a prior division's ruling.").

   b.   Arguments Based on District Court's Equitable Authority

¶ 34   Trustees paid the attorney fees out of trust assets, on behalf of the trust. Trustees therefore maintain that the district court had authority to award attorney fees to trustees in order to restore trust assets expended in response to Bruce's frivolous attacks:

> If Mr. Bruce is permitted to run without consequence to foreign courts to bring frivolous challenges to the final decision of the Colorado probate court, Colorado courts will be effectively disabled from efficiently resolving a trust's final administration and protecting what remains of the trust's assets.

¶ 35   A court presiding over a probate matter certainly possesses equitable authority "to account for the unique circumstances of a particular proceeding and to ensure that parties are treated fairly and the decedent's will is upheld." *Beren v. Beren*, 2015 CO 29, ¶ 18 (citing *Leslie*, 886 P.2d at 287). Even so, the general rule remains that a court may not award attorney fees in the absence of a statute, court rule, or contract expressly permitting those fees. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 820-21 (Colo. 2002). As explained above, section 13-17-102, on which the district court

here relied, did not authorize the court to award attorney fees incurred solely in the West Virginia case unless the West Virginia work product was also used in this case. And, while trustees cite other statutes ostensibly authorizing a probate court to award attorney fees, those statutes do not mention attorney fees at all. *See* §§ 15-10-302, 15-16-201, C.R.S. 2016. We cannot infer an exception to the general rule against attorney fees awards from general provisions "that do not explicitly address attorney fees." *Huizar*, 52 P.3d at 821; *see also In re Estate of Klarner*, 113 P.3d 150, 157 (Colo. 2005) (holding that section 15-16-201(1) does *not* authorize an award of attorney fees to a prevailing party, even those fees incurred to redirect "wayward Trustees").[8]

¶ 36     Finally, trustees' premise is flawed. In fact, a party may face consequences for going to a foreign court with frivolous litigation affecting Colorado trust assets: the estate may seek an attorney fees

---

[8] Indeed, in *In re Estate of Leslie*, 886 P.2d 284, 287 (Colo. App. 1994), *cited in Beren v. Beren*, 2015 CO 29, ¶ 18, the division determined that the probate code did not authorize the probate court to award the attorney fees in that case. Hence, the division looked to section 13-17-102.

award against that party from the foreign court, according to the statutes and rules of that jurisdiction.

### 3. Summary and Remand Directions

¶ 37    Section 13-17-102 does not authorize a Colorado court to award attorney fees incurred in an action in a foreign court, unless work product created for use in the foreign court is also used in the Colorado court.

¶ 38    Neither the district court's order nor the record clarifies, however, whether trustees used work product created for the West Virginia action in these Colorado proceedings.[9]  Accordingly, we vacate the portion of the order awarding $54,565 for attorney fees incurred in the West Virginia action, and we remand for the district court to determine whether trustees used work product created for the West Virginia action in these Colorado proceedings.  *See Kraft,* 122 P.3d at 1026.  The court may, but need not, hold a further

---

[9] Trustees contend that Bruce failed to raise this work-product issue adequately in the district court.  But, while Bruce did not object to the amount of attorney fees requested for the West Virginia case, he did object to such fees on the ground that section 13-17-102 does not authorize an award of those fees.  In response, the district court explicitly addressed the extent to which the statute permits a fees award for the West Virginia case.  Our review of the court's order requires us to consider that same question.

hearing. If trustees used work product created for the West Virginia action in this case, the court shall award to trustees their attorney fees incurred for that work product. If not, the court shall not award any attorney fees incurred in the West Virginia action.

### III.     Conclusion

¶ 39     The district court's order, as it pertains to attorney fees incurred in the action before the West Virginia federal court, is vacated. The case is remanded for further proceedings consistent with this opinion.

JUDGE WEBB and JUDGE HAWTHORNE concur.