Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 18, 2018

**2018 CO 58**

**No. 17SC55, <u>Roberts v. Bruce</u>—Attorney's Fees—Statutory Interpretation.**

In this case, the supreme court considers whether a trial court may award attorney's fees under section 13-17-102, C.R.S. (2017), for conduct occurring outside Colorado courts.  Reviewing the plain language of section 102, the supreme court concludes an award of attorney's fees pursuant to that section is limited to conduct occurring in Colorado courts and therefore affirms the judgment of the court of appeals.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

**2018 CO 58**

**Supreme Court Case No. 17SC55**

*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1824

**Petitioners:**

Jay A. Roberts and Ashley Roberts McNamara, as Cotrustees of the Della I. Roberts Trust,

v.

**Respondent:**

Barry L. Bruce.

**Judgment Affirmed**

*en banc*
June 18, 2018

**Attorneys for Petitioner:**
Frederick J. Lockhart, Jr.
Irit Louise Lockhart
  *Denver, Colorado*

**Attorneys for Respondent:**
Jackson Kelly PLLC
John S. Zakhem
John L. Skari, Jr.
  *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1    In this case we consider the reach of Colorado's attorney's fees statute. Specifically, we consider whether the trial court properly awarded the petitioners attorney's fees for costs incurred in responding to an action deemed frivolous in West Virginia.[1]  We hold that an award of attorney's fees pursuant to section 13-17-102, C.R.S. (2017), is limited to conduct occurring in Colorado courts.  We therefore affirm the court of appeals.

## I.  Facts and Procedural History

¶2    This case concerns the improper administration of a trust and resulting litigation. Della Roberts created the trust at issue with the help of her only son, James Roberts, shortly before she died in 1996.  James Roberts was married to Mary Sue Roberts and they had three children: petitioners Jay Roberts and Ashley Roberts McNamara ("the Robertses"), and Andrew Roberts.[2]  The trust named James as the initial trustee, and provided that all of Della Roberts's grandchildren were beneficiaries of the trust.

¶3    James administered the trust until his death in 2012.  As trustee, James was obliged to undertake certain duties delineated in the trust.  This did not happen. Instead, the district court found that "[f]rom the very beginning, James Roberts failed to

---

[1] We granted certiorari on one issue:

> Whether the court of appeals erred in holding, as a matter of law, that section 13-17-102, C.R.S. (2016), only permits a Colorado probate court to award attorney fees for vexatious collateral federal litigation if the fees produced work product used in the Colorado probate action, even where the probate court determined that the groundless collateral litigation unnecessarily expanded the Colorado proceeding.

[2] We refer to Mary Sue Roberts as Mary Sue and James Roberts as James to avoid confusion with their children.

fulfill his obligations as trustee." Despite this, nobody expressed any concern over James's improper administration until after his death.

¶4     After James died, the trust provided that Mary Sue was to succeed him as trustee. In response, the Robertses invoked the provision of the trust permitting removal of the trustee upon a majority vote of the trust beneficiaries and they removed Mary Sue as successor trustee.[3] In April 2013, the Robertses filed a motion in district court in Colorado to have themselves named as permanent cotrustees in place of Mary Sue. Mary Sue responded, arguing that the Colorado court lacked jurisdiction because she and James had moved from Colorado to West Virginia in 1999, approximately three years after the trust was created in Colorado. In June 2013, the district court rejected Mary Sue's jurisdictional challenge, and, in early August, granted the Robertses' motion and appointed the Robertses as cotrustees.

¶5     Meanwhile, in May 2013, while the Robertses were litigating the trusteeship issue in Colorado, Mary Sue filed a separate action against the Robertses in state court in West Virginia, again claiming that jurisdiction properly lay in West Virginia. The Robertses appeared and removed the case to federal court. Ultimately, the federal district court concluded that Colorado had jurisdiction over the trust, and therefore dismissed Mary Sue's complaint for lack of jurisdiction. Mary Sue sought review in the Fourth Circuit, but voluntarily dismissed her appeal in early 2014. As a result of the litigation in West Virginia, the Robertses incurred substantial attorney's fees.

---

[3] The third child of Mary Sue and James Roberts, Andrew Roberts, is not a party to this case.

3

¶6 After Mary Sue dismissed her appeal in West Virginia, the Robertses moved in Colorado state court to be reimbursed for the attorney's fees they incurred in responding to Mary Sue's West Virginia action. The district court found that the West Virginia action "lacked substantial justification under C.R.S. § 13-17-102, because it was frivolous, groundless and vexatious." Further, the court concluded that there was "no legitimate basis for challenging the jurisdiction of the Colorado court over the Trust and that there is little explanation for this legal action beyond a bad faith effort to delay and impede the [Robertses'] efforts to resolve the issues before this Court." The court found that Mary Sue Roberts could not be expected to have knowledge of such a jurisdictional issue, and it therefore assessed the $54,565 attorney's fee award against her counsel, Barry Bruce.

¶7 Bruce appealed and the court of appeals vacated the award. The court of appeals held that section 13-17-102 does not permit a court to award fees for an action in a foreign court. Bruce v. Roberts, 2016 COA 182, ¶ 37, __ P.3d __. The Robertses sought certiorari, which we granted.

## II. Standard of Review

¶8 Statutory interpretation is a question of law that we review de novo. See Jefferson Cty. Bd. of Equalization v. Gerganoff, 241 P.3d 932, 935 (Colo. 2010). We begin by looking to the plain language of the statute, construing words and phrases according to the rules of grammar and common usage. Id. In determining the meaning of a statute, our central task is to give effect to the General Assembly's intent. Id. To this

4

end, we read the statute as a whole and seek to give consistent, harmonious, and sensible effect to all its parts. Id.

¶9 We presume that the General Assembly writes each statute with the intent to substantively affect the law, and we therefore disfavor a reading of a statute that would render other statutory provisions superfluous or without practical effect. See Lombard v. Colo. Outdoor Educ. Ctr., Inc., 187 P.3d 565, 571 (Colo. 2008).

## III. Relevant Law

¶10 The award of attorney's fees in this case is governed by section 13-17-102. That section contains several provisions relevant to our analysis. Section 102(1) provides that a court may award attorney's fees as part of its judgment, and section 102(2) provides that a court must award fees for actions that lacked substantial justification. Both of these subsections contain the same limiting language: the action must occur "in any court of record in this state":

> [1] [I]n any civil action of any nature commenced or appealed in any court of record in this state, the court may award . . . as part of its judgment . . . reasonable attorney fees.

> [2] [I]n any civil action of any nature commenced or appealed in any court of record in this state, the court shall award, by way of judgment or separate order, reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification.

§ 13-17-102(1), (2) (emphases added). But the "in this state" language does not appear in every part of section 102. Notably, it is absent from section 102(4).[4] That subsection

---

[4] There are two subsections between section 102(2) and 102(4) which are not relevant to our present analysis. Section 102(2.1) provides that the filing of a certificate of review

5

refers simply to "an action" but does not specifically require it to be an action in a court of record in this state:

> The court shall assess attorney fees if . . . it finds that an attorney or party brought or defended an action . . . that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under the Colorado rules of civil procedure or a designation by a defending party under section 13-21-111.5(3) that lacked substantial justification. As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

§ 13-17-102(4).

¶11 Section 102(4) overlaps heavily with section 102(2). Both subsections require the court to award attorney's fees if it determines that a party has brought an action that lacks substantial justification. Section 102(4), however, provides greater detail and defines what it means to lack substantial justification. It also contains grounds to award fees not described in section 102(2): a civil action interposed for delay or harassment or if the court finds that a party unnecessarily expanded the proceeding by other improper conduct. While section 102(4) does not, by its plain language, limit its application to courts of record in this state, it does refer to the Colorado Rules of Civil Procedure and a specific Colorado statute.

¶12 There are several other subsections in section 102, but none purport to provide an independent basis to award attorney's fees. Section 102(5) limits application of

---

by a licensed health care professional creates a rebuttable presumption that the action is not frivolous or groundless. Section 102(3) concerns the apportionment of a fee award among multiple attorneys.

section 102 when the responsible party voluntarily dismisses its claim. Section 102(6) concerns the assessment of attorney's fees against a pro se party. Section 102(7) exempts actions brought in good faith to establish a new theory of law in Colorado. Finally, section 102(8) limits section 102's application by exempting traffic offenses, matters brought under the Children's Code or related juvenile issues, and municipal ordinance violations. Thus, the only sections that substantively authorize the award of attorney's fees are sections 102(1), 102(2), and—potentially—section 102(4).

¶13 The issues in this case are whether section 102(4) provides an independent basis to award attorney's fees and, if so, whether the absence of specific language limiting the applicability of section 102(4) to actions in courts of record "in this state" then evinces the General Assembly's intent to expand the reach of that subsection to actions in foreign courts. Having established the relevant statutory framework, we now apply these principles to the case at hand.

## IV. Analysis

¶14 The Robertses, in attempting to recover attorney's fees incurred in the West Virginia action, argue that section 102(4) provides an independent basis to sanction a party for misconduct. They further argue that this independent basis is broader than those in the preceding subsections because the absence of the "in this state" geographic limitation found in the preceding sections demonstrates the General Assembly's intent that section 102(4) encompass foreign actions with a "detrimental relational nexus" to Colorado. Therefore, they assert that section 102(4) provided a statutory basis to award fees for the West Virginia action. In support of their position, the Robertses point out

7

that the legislative declaration in section 13-17-101, C.R.S. (2017), states that the attorney's fees statute should be "liberally construe[d]."

¶15    The Robertses' argument primarily relies on the fact that section 102(4) contains additional grounds to award fees that are not included in the preceding subsections. Therefore, they argue that this subsection must have force independent of the preceding subsections and, without language limiting its application, it encompasses conduct occurring in foreign courts.

¶16    The court of appeals was not persuaded, and concluded that "subsection (4) does not grant a court the authority to assess attorney fees that could not be awarded under subsections (1) and (2)." Roberts, ¶ 21. The court of appeals concluded that subsection (4) merely "clarifies the process" provided for in the preceding subsections, and does not itself provide an independent basis to award fees. See id. at ¶ 20. The court of appeals noted that if the Robertses were correct that section 102(4) constituted an independent basis to award fees, its broad reach would subsume the other subsections, robbing the geographic limitation of any practical effect and effectively writing subsections (1) and (2) out of the statute. Id. at ¶ 22. Thus, the court of appeals held that section 102 does not permit a court to award fees for an action in a foreign court.

¶17    We agree with the court of appeals. The plain and unconstrained language in section 102(4) would, if accorded independent significance, render much of section 102 superfluous. If the General Assembly had intended section 102(4) to be so broad, it would not have written a geographic limitation in sections 102(1) and 102(2). Under the Robertses' proposed interpretation, those sections would be without any practical

8

effect. We reject an interpretation of a statute that renders statutory language, especially two entire subsections, meaningless. See Lombard, 187 P.3d at 571. Rather, a more logical reading of section 102(4) indicates that it merely clarifies the scope of the authority granted in sections 102(1) and 102(2).

¶18 Section 102(2) covers "a civil action" that "the court determines lacked substantial justification." Section 102(4) defines the term "lacked substantial justification" as "substantially frivolous, substantially groundless, or substantially vexatious." The fact that section 102(4) defines the operative term in section 102(2) is a good indication of the General Assembly's intended relationship between those subsections. While section 102(4) does contain several additional grounds for awarding attorney's fees that are not mentioned in section 102(2), it does so as a clarification of the blanket authority to award fees authorized in section 102(2). Notably, one of the additional grounds in section 102(4) is a nonparty designation that lacks substantial justification—a ground already covered by section 102(2). § 13-17-102(4) ("The court shall assess attorney fees if . . . an attorney or party unnecessarily expanded the proceeding by other improper conduct, including . . . a designation by a defending party . . . that lacked substantial justification."(emphasis added)). None of the additional grounds in section 102(4) are plausibly distinct from the broad prohibition in section 102(2) against actions that "lack[] substantial justification," given the expansive definition of that term. Thus, we conclude that section 102(4) operates as a clarification of the authority to award attorney's fees as granted in sections 102(1) and 102(2).

9

¶19   Furthermore, the legislative declaration in section 101 supports this limited reading of section 102(4).  It states that "courts of record of this state," not foreign courts, have become increasingly burdened with litigation.  § 13-17-101.  Thus, the General Assembly appears to have been concerned exclusively with the burden on courts in this state, and we interpret the statute with this intent in mind.  See Gerganoff, 241 P.3d at 935.  The Robertses' proffered interpretation would undermine this intent by significantly increasing the potential conduct Colorado courts may (or must) sanction without providing any discernable limit on the scope of this new authority.  Arguably, section 102(4) could then extend to any action even without a nexus to Colorado.  The text of the statute does not provide any limiting principle precisely because this unfettered grant of authority could not have been the General Assembly's intent in crafting section 102.

¶20   In sum, we conclude that section 102(4) is a clarification of sections 102(1) and 102(2), and does not constitute an independent basis to award fees.  The significance of the absence of a geographic limit in section 102(4) is thus moot because sections 102(1) and 102(2) do include such a limitation.[5]  We therefore hold that an award of attorney's fees pursuant to section 13-17-102 is limited to conduct occurring in Colorado courts.

---

[5] The parties also argue about the applicability of the work product doctrine from the court of appeals' decision in Board of County Commissioners v. Kraft Building Contractors, 122 P.3d 1019 (Colo. App. 2005).  The trial court did not apply Kraft, and so the court of appeals remanded for the trial court to engage in a Kraft analysis.  Roberts, ¶ 38.  Thus, this issue is not ripe for review at this stage and we express no opinion as to the continuing validity of the court of appeals' decision in Kraft.

## V. Conclusion

¶21    We affirm the judgment of the court of appeals and remand to that court for further proceedings consistent with this opinion.